Ernestine GILES, Petitioner, Appellant,

v.

The FAMILY COURT OF the State of DELAWARE, Respondent, Appellee.

Supreme Court of Delaware.

Submitted Nov. 15, 1979.

Decided Jan. 22, 1980.

Paulette Sullivan Moore, Wilmington, for petitioner, appellant.

William M. Remington, Deputy Atty. Gen., Wilmington, for respondent, appellee.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ.

DUFFY, Justice:

The issue in this case is whether petitioner was denied permanent employment with the Family Court because of racial discrimination.

I

Ernestine Giles (petitioner) initiated this proceeding before the Delaware Equal Employment Review Board (Board)[1] which determined, after hearing, that discrimination had occurred in violation of 19 *Del.C.* § 711

1. The membership of the Board is specified in 19 *Del.C.* § 710(8); proceedings before the Board are governed by 19 *Del.C.* § 712.

*et seq.*, and ordered that petitioner be offered the "first available permanent position as typist in [the Family Court's] Georgetown, Delaware, office . . . ." On appeal by the Family Court, the Superior Court concluded that petitioner had failed to establish a *prima facie* case of discrimination and, for that reason, reversed the Board's order.

The relevant facts shown by the record before us are these:

On March 12, 1972, petitioner (who is black) and Mrs. Nancy Jones (who is white) were hired by the Family Court as Merit System employees within the Something for Something (SFS) program. A SFS worker is not a permanent State employee but is appointed for a limited period and is eligible for permanent employment only upon meeting Merit System qualifications. Thereafter, Mrs. Jones passed the clerk-typist examination and received a permanent position with the Family Court in Sussex County.

On February 16, 1973, Mrs. Jones resigned, thus creating a vacancy for a clerk-typist. Meanwhile, two other events relevant to this case had occurred: In January 1973, a clerk-typist notified Brooks Parker (who was black), the Office Supervisor in charge of hiring for the Family Court in Sussex County, that she would take maternity leave effective March 1, thus creating a temporary opening; and on February 13, petitioner passed the clerk-typist test and so became eligible for permanent employment.

Later in February, Mr. Parker told petitioner about the two vacancies, and informed her that she could have whichever position she chose. Petitioner told Mr. Parker that before she made a decision, she "wanted to talk it over with different people in [her] . . . department."

On February 26, before petitioner had made her decision, Mrs. Jones contacted the Family Court seeking reinstatement to her former position. The next day, February 27, petitioner informed Mr. Parker that she wanted the permanent position. The result, of course, was that two persons were seeking one available permanent position. For guidance as to what to do, William Conway, the Family Court supervisor in Sussex County for the clerk-typist position, communicated with the Family Court in Wilmington which, in turn, consulted the State Personnel Commission.[2] The Commission construed the Merit System Rules to require that an employee seeking reinstatement be given priority over persons available for appointment from the regular competitive list, and so informed the Family Court.

Mr. Parker then arranged for Mrs. Jones to return to work (in her former capacity) on March 5, the Monday after he had been informed of the Personnel Commission's interpretation of the Rules. The appropriate form (PT–1) was completed for Mrs. Jones and signed by the Director of the State Personnel Commission, thereby making her reinstatement official.

Meanwhile, petitioner continued to work. However, a PT–1 form formalizing her appointment to a permanent position was never signed by the State Personnel Director. Mr. Parker, without consulting petitioner, prepared a new PT–1, which placed petitioner in the position temporarily vacant while the clerk-typist was on maternity leave. That form received the required signature on March 13. Thus, Mrs. Jones was returned to her former status and petitioner was working on a temporary basis.

When petitioner learned that she was only a temporary employee and that Mrs. Jones had been placed in the permanent position, she filed the charge of racial discrimination before the Board.[3] As we have

**2.** The State Personnel Commission is created under 29 *Del.C.* § 5906 and, speaking generally, has policy-making responsibility for personnel standards and administration in accordance with Merit System principles. 29 *Del.C.* § 5907.

**3.** 19 *Del.C.* § 711 provides in part that:
  "(a) It shall be an unlawful employment practice for an employer:

  (1) To fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, age, religion, sex or national origin; . . . ."

already noted, the Board determined that discrimination had occurred but that ruling was reversed by the Superior Court. Petitioner then docketed this appeal.

## II

Petitioner argues that she received a permanent Merit System appointment as of February 27, when she accepted the job offered to her by Mr. Parker. It follows, she says, that when Mrs. Jones returned, there was not a vacancy; therefore, a *prima facie* case exists that she has been refused appointment on the basis of race because there was not a reasonable basis for rejecting her.

The Family Court contends that: (1) a Merit System appointment is not made until it has been approved by the Director of State Personnel; (2) such approval had not been given to petitioner at the time Mrs. Jones sought reinstatement and, therefore, a vacancy existed; and (3) as between petitioner and Mrs. Jones, the latter had priority under the Merit System Rules which give such preference to an employee seeking reinstatement over applicants on the regular competitive list.

## III

This is the first ruling by the Equal Employment Review Board to reach this Court on appeal and, indeed, there is but one prior reported appeal from the Board. See *News-Journal Company v. Connell*, Del.Super., 328 A.2d 150 (1974).

The threshold question, of course, is the standard of review to be applied to the Board's ruling. The statute, § 712(k), provides that an "appeal shall be on the record only before the Department." In *Connell*, the Superior Court applied a "substantial evidence" test in reviewing the Board's action, saying that "[i]f the record discloses substantial evidence to support the Board's decision, this Court must affirm." *Id.* at 153.

That standard is consistent with the approach Delaware Courts have generally tak-

en in reviewing agency decisions. See, for example, *Unemployment Insurance Appeal Board of the Dep't of Labor v. Duncan*, Del.Supr., 337 A.2d 308 (1975); and *Sutton v. Board of Adjustment of the City of Wilmington*, Del.Super., 200 A.2d 835 (1962). And the Administrative Procedures Act, which applies to thirteen State agencies, directs that judicial review of agency decisions be on a "substantial evidence" basis.

■ We hold that judicial review of a decision by the Board "shall be limited to a determination of whether the [Board's] . . . decision was supported by substantial evidence on the record before" it. Compare 29 *Del.C.* § 6442.

## IV

Turning now to the merits, the parties agree that the four-pronged test announced by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), should be invoked to determine whether there is substantial evidence in the record to support the Board's decision that discrimination occurred. That test requires a petitioner to make out a *prima facie* case of discrimination, as follows:

"[Petitioner has] the initial burden . . . of establishing a prima facie case of racial discrimination, [which] may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 1824.

■ We conclude that this is the test to be applied in determining whether a petitioner has established a *prima facie* right to relief under 19 *Del.C.* § 711(a). While the *McDonnell Douglas* test was developed in the context of Title VII cases, in our view it is appropriate for a § 711(a) action as well,

because the language of the Delaware statute is substantially the same as the Title VII language defining an unlawful employment practice. Compare Section 703(a)(1) of the Civil Rights Act of 1964, 42 *U.S.C.* § 2000e–2(a)(1) with 19 *Del.C.* § 711(a). And the discrimination alleged here is "disparate treatment," which is the type of discrimination for which the *McDonnell Douglas* test was formulated.

■ We should also add that if a petitioner makes out a *prima facie* case of discrimination under § 711(a), it does not necessarily follow that such a finding must be made by the trier of fact or that the petitioner is entitled to relief. That is the substance of the rule announced in *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), which, we conclude, is also to be applied to a § 711(a) action. In *Furnco* the Supreme Court said:

"When the prima facie case is understood in the light of the opinion in *McDonnell Douglas*, it is apparent that the burden which shifts to the employer is merely that of proving that he based his employment decision on a legitimate consideration, and not an illegitimate one such as race. To prove that, he need not prove that he pursued the course which *would both enable him* to achieve his own business goal *and* allow him to consider the *most* employment applications. Title VII forbids him from having as a goal a work force selected by any proscribed discriminatory practice, but it does not impose a duty to adopt a hiring procedure that maximizes hiring of minority employees. To dispel the adverse inference from a prima facie showing under *McDonnell Douglas*, the employer need only 'articulate some legitimate nondiscriminatory reason for the employee's rejection.'" 98 *S.Ct.* at 2950.

After reviewing the record, the Superior Court concluded that petitioner had failed to make out a *prima facie* case of racial discrimination. The Court focused principally on the Board's conclusion that the Family Court had given preference to a white woman over petitioner "for no valid reason." It determined that the Board's conclusion was incorrect, saying:

"Indeed the record is clear that Family Court, for a reason thought to be valid by it, rehired a white woman who had just left the open position because Family Court was under the impression that it had no choice in the matter under the Merit System Rules . . . . Contrary to the Board's decision, Family Court had what it thought to be a very good reason for giving preference to the white woman and it had nothing to do with race—it had to do with the rehiring of a qualified former employee who was given that preference by rules which then bound Family Court."

Applying the *McDonnell Douglas* test to the record facts, the Court determined that petitioner had not satisfied the fourth prong of the test: the Family Court did not have a position that "remained open," for which it "continued to seek applicants," after it rejected petitioner. The Court concluded that petitioner was rejected because a person with a higher priority had applied for the position, and that after she was rejected, the position was effectively closed to persons with her qualifications, and the Family Court did not seek or accept new applications for the position.

■ We have reviewed the record and while our analysis of what it contains differs somewhat from that made by the Superior Court, we reach the same conclusion. The testimony is undisputed that the Family Court reappointed Mrs. Jones because it thought it could not do otherwise under the Merit System Rules. Indeed, petitioner does not argue that the Personnel Commission improperly construed the Merit System Rules when it advised the Family Court that Mrs. Jones was entitled to a preference in hiring. A fair inference from the record is that the Family Court was prepared to hire petitioner until it received the application which was entitled to priority over hers.[4] Receipt of that application effective-

---

4. Mr. Parker had died before the Board hearing was held. He was the Family Court Supervisor

who had had direct contacts with both petitioner and Mrs. Jones about the vacancy. And

ly foreclosed petitioner, or anyone else in petitioner's status, from obtaining the position.

 The only evidence which might be regarded as indicating that race, rather than priority status under the Merit System Rules, was responsible for petitioner's rejection is based solely on the fact that Mrs. Jones is white, and petitioner is black. That meets the first requisite of *McDonnell Douglas* but it alone is not sufficient to support a *prima facie* finding of racial discrimination.

Affirmed.

while there was much testimony about what he said and did in getting the vacancy filled, the Board did not have the benefit of his testimony as to what had occurred. It is undisputed in the record, however, that petitioner, according to her own testimony, did not advise Mr. Parker until February 27, 1973 (after considering the "offer" for several days) that she was "going to take the permanent position"; meanwhile, on February 26 Mrs. Jones, according to the testimony of William Conway (who was in charge of the Support Department in Sussex

County), had "requested to be [reinstated] at her old job slot." The Board's finding rested largely on the Family Court's failure to process a PT–1 form for petitioner but, as we read the record, it is undisputed that Mrs. Jones' request for reinstatement preceded petitioner's statement to Mr. Parker that she would take the position. In any event, the Family Court (logically and fairly) regarded both applications as pending simultaneously and processed the application by Mrs. Jones in accordance with the advice it received from the Personnel Commission.