**Fred CHALAWSKY, Plaintiff,**

v.

**SUN REFINING AND MARKETING COMPANY, INC., Defendant.**

**Civ. A. No. 89–114–JLL.**

United States District Court, D. Delaware.

Feb. 23, 1990.

Roger A. Akin and Christopher J. Curtin of Sawyer & Akin, Wilmington, Del., for plaintiff.

Richard D. Allen and R. Judson Scaggs, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This is an age discrimination case. Plaintiff, Fred Chalawsky ("Chalawsky"), contends that defendant, Sun Refining and Marketing Company, Inc. ("Sun"), discriminated against him when it refused to give him a job following an employee reorganization at the plant at which Chalawsky worked. Chalawsky alleges claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Delaware state law, 19 *Del.C.* § 711 *et seq.* Sun has moved for summary judgment on all claims. This Court has jurisdiction under 28 U.S.C. § 1331.

## FACTS

Chalawsky was trained and educated in chemical engineering. (*See* Docket Item ["D.I."] 26 at A–1–A–3, Deposition of Fred Chalawsky ["FC Dep."] at 8–10.) He joined the SunOlin Chemical Company ("SunOlin") in March of 1967 as a process engineer in technical services. After approximately six months of service, in the fall of 1967, Chalawsky became a technical service superintendent, a position he held until December of 1968, when he was named area superintendent of his plant. In January of 1975, Chalawsky was transferred to become the area superintendent of another plant, an ethylene plant located in Claymont, Delaware. He held this position until his alleged involuntary termination in December of 1987, at which point Chalawsky was 56 years old.

Chalawsky's employer, SunOlin, was a joint venture between Sun and a company named Olin. (D.I. 23A, Exhibit 3, Deposition of John G. Harron ["JH Dep."] at 4.) Sun, a Pennsylvania corporation, bought out Olin's share in SunOlin on November 4, 1987, thereby obtaining sole ownership of the ethylene plant at which Chalawsky worked. (*See id.* at 15.) Sun's plan was to integrate the ethylene plant with a refinery it owned, in nearby Marcus Hook, Pennsylvania, in order to make the ethylene plant more efficient and improve Sun's position in the chemical industry. (*See* D.I. 23A, Exhibit 4, Deposition of Joseph Mazzei ["JM Dep."] at 20–21.) To achieve this integration, a decision was made to reduce the SunOlin employee force from 49 positions to 15. (*See* D.I. 23A, Exhibit 3, JH Dep. at 32.) Eventually, however, the 49 positions were only reduced to 23. (*See id.*) Chalawsky's area superintendent job was one of those eliminated.

On October 7, 1987, John G. Harron, president of SunOlin, sent a memorandum to all employees at the ethylene plant, including Chalawsky. (D.I. 26 at A–26.) The memorandum discussed the pending integration of SunOlin with Sun's Marcus Hook facility, and the staffing cuts that would result. Attached to the memoran-

dum were sheets describing the various job options available to SunOlin workers, including an involuntary termination plan. Chalawsky selected the option that consisted of consideration for another position within the Marcus Hook refinery. These preference sheets were used by SunOlin's management in making hiring recommendations to Sun.

Shortly after Sun bought out Olin, in early November of 1987, Chalawsky was called into Harron's office. He was informed he would be terminated on November 30, 1987, and would not be hired by the reorganized company. (D.I. 26 at A–34–A–35, FC Dep. at 48.) Harron gave him ten working days to submit a second preference sheet indicating one of the involuntary termination options. (*Id.*) On this second sheet, Chalawsky chose early retirement, but noted he still preferred to be employed. (*See* D.I. 26 at A–35.) Chalawsky also noted on the sheet that he believed he was qualified for five different positions in the reorganized company, two of which were still unfilled at that point. (*Id.*)

The five positions, for which Chalawsky stated he thought he was qualified, were: Operating Superintendent, Area Supervisor (two positions), and Operating Technical Specialist or "OTS" (two positions). (*Id.; see also* D.I. 23A, Exhibit 5, FC Dep. at 78.) The Operating Superintendent position was filled by Gerald O'Rourke, who was 49 years old. (D.I. 24, Affidavit of Gloria M. Rebori ["Rebori Aff."] at ¶ 2.) One of the Area Supervisor jobs was filled by Wayne Roser, 56 years old. (*Id.*) One of the OTS positions was filled by Robert Knorr, who was 33 years old. (*Id.*) The two slots that were left open when Chalawsky was terminated were an Area Supervisor job, later filled by 56 year-old Marshall Short, and an OTS position that was eventually filled by 30 year-old Curtis Zimmerman. (*See* D.I. 23A, Exhibit 5, FC Dep. at 2; D.I. 26 at 4.)

On January 18, 1988, Chalawsky filed age discrimination charges against Sun with the Delaware Department of Labor ("DDOL"). (*See* D.I. 23A, Exhibit 5, FC Dep. at Dx6.) Following a hearing in May

of 1988 (*Id.* 122), the DDOL determined Chalawsky's charges of age discrimination could not be substantiated. (*Id.* at Dx7.) The EEOC also reviewed Chalawsky's charges and, in December of 1988, concluded the evidence gathered in the DDOL investigation did not establish any violation. (*See* D.I. 24, Exhibit A, Rebori Aff.)

Chalawsky instituted this suit on March 10, 1989. (D.I. 1.) Discovery has been completed. Sun moved for summary judgment on November 7, 1989. (D.I. 22.) The Court heard oral argument on the motion on January 12, 1990.

## DISCUSSION

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the Court must "view the evidence in the light most favorable to the non-moving party ... and resolve any conflicts in his favor." *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir.1988) (citations omitted). Summary judgment must be granted, however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### I. *The ADEA Claim*

The ADEA prohibits discrimination against any individual who is "at least 40 years of age," 29 U.S.C. § 631(a) (West Supp.1989), with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age...." *Id.* at § 623(a)(1). To recover under the ADEA, a plaintiff must "prove that age was a determinative factor in the defendant employer's decision ... The plaintiff need not prove that age was the employer's sole or exclusive consideration, but must prove that age made a difference in the decision." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir.1987) (in banc) (citations omitted), *cert. dis-*

*missed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

Direct evidence of discriminatory motivation is not required, as the proverbial "smoking gun" is usually not found in employment discrimination cases. *See id.* A plaintiff can therefore establish his case by indirect proof that satisfies the *McDonnell Douglas–Burdine* allocation of burdens of production. *See id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)); *see also Bartek v. Urban Redevelopment Authority of Pittsburgh,* 882 F.2d 739, 742 (3d Cir.1989) (noting that the *McDonnell Douglas–Burdine* allocation of burdens is still controlling).

That three-part allocation of burdens requires, first, that the plaintiff prove "by the preponderance of the evidence a prima facie case of discrimination." *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. If the plaintiff is able to make this prima facie showing, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Lastly, if the defendant satisfies its burden, the plaintiff must then prove by a preponderance of the evidence that the defendant's legitimate reasons "were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted). The plaintiff, however, always retains "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [him]...." *Id.* (citations omitted).

### a. The Operating Superintendent and Two Area Supervisor Jobs

Sun argues that Chalawsky cannot even establish a prima facie case for three of the five positions he claims Sun should have offered him. These three positions are the Operating Superintendent and the two Area Supervisor slots.

Chalawsky has not offered any direct evidence of age discrimination. Without such evidence, an ADEA plaintiff can establish his prima facie case of discrimination

> by proving by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was dismissed despite being qualified; and (4) he ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination.

*Chipollini,* 814 F.2d at 897 (citation omitted). Sun concedes for purposes of its summary judgment motion that Chalawsky has met the first three elements of a prima facie case. Sun argues, however, that Chalawsky cannot prove the fourth element because the individuals chosen to fill the three positions in question were not "sufficiently younger" than Chalawsky.

Chalawsky's answering brief (D.I. 26) does not address this argument. Nor does it offer any rationale for why this fourth element should be considered satisfied or inapplicable. More importantly, however, at oral argument counsel for Chalawsky conceded that a prima facie case could not be made as to two of the three positions Sun challenges. Accordingly, Sun is entitled, at the very least, to summary judgment with respect to Chalawsky's allegations that he was denied those two jobs because of his age. *Cf. Fowle v. C & C Cola,* 868 F.2d 59, 62 (3d Cir.1989) (ADEA defendant can prevail on summary judgment by showing plaintiff's prima facie case is deficient).

▇ Chalawsky does not concede that he failed to make out a prima facie case with regard to the third position, one of the Area Supervisor slots. At oral argument, Chalawsky's counsel indicated that this position was still at issue because it was not filled at the time Chalawsky left Sun. (The position was eventually filled by someone who was 56 years old, the same age as Chalawsky.)

The point of the prima facie showing is to establish that the plaintiff was rejected "under circumstances which would give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct.

at 1093 (footnote omitted); *cf. EEOC v. Metal Service Co.*, 892 F.2d 341, 347 (3d Cir.1990) (*McDonnell Douglas* test should not be viewed as rigid formula because its significance is that it helps to indicate when sufficient evidence has been offered to create an inference of discrimination). Therefore, it seems unlikely that a plaintiff could make out a prima facie ADEA case just by showing that there were jobs left unfilled when he was rejected. But even if such a showing, perhaps coupled with evidence that numerous individuals in the protected class were rejected for the same position, would be sufficient to make out the fourth element of a prima facie case where a position goes *unfilled*, here the position was filled. Moreover, since the position was filled by someone who was exactly the same age as Chalawsky, the circumstances do not give rise to an inference of age discrimination. Sun is therefore also entitled to summary judgment on Chalawsky's claim that it discriminated against him when it failed to offer him the second Area Supervisor position.

### b. The OTS Jobs

■ Sun does not dispute that Chalawsky can make out a prima facie case as to the two positions remaining in this case, namely the OTS jobs.[1] (D.I. 27 at 3.) Both of them were filled by significantly younger individuals. One OTS position was filled by 33 year-old Robert Knorr; the other was filled, after Chalawsky's termination, by 30 year-old Curtis Zimmerman.

Since Chalawsky can establish a prima facie case, the burden shifts to Sun "to articulate some legitimate non-discriminatory reason for the discharge." *Sorba v. Pennsylvania Drilling Co., Inc.*, 821 F.2d 200, 202 (3d Cir.1987) (citing *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. at 1824), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). Sun contends it did not offer Chalawsky either of the two OTS positions because he did not possess certain necessary skills:

Chalawsky was not selected for any of the positions because it was believed he lacked the management, leadership and hands-on skills needed to fill the positions within the integrated operating department. . . .

(D.I. 23 at 7; *see also id.* at 16.)

Because Sun has proffered a legitimate, non-discriminatory reason for not placing Chalawsky into one of the OTS jobs, the burden now shifts back to Chalawsky. He must produce sufficient evidence to permit a reasonable trier of fact to infer that Sun was actually motivated by a discriminatory reason, and not by the legitimate reason it claims. *Chipollini*, 814 F.2d at 898. Chalawsky can also meet his burden by merely proving that the reasons offered by Sun are "pretextual," somehow inconsistent, or otherwise unworthy of belief. *See id.*

Chalawsky points to numerous aspects of the record to demonstrate that Sun's reason for terminating him is pretextual. First, Chalawsky contends that he was more than just an average performer. He underscores his numerous salary increases and the many complimentary comments in his salary increase memos. (*See* D.I. 26 at A–6–A16.) Secondly, Chalawsky argues that Harron, SunOlin's president, conceded that Chalawsky was qualified for the OTS positions. Thirdly, Chalawsky contends his salary increase memos demonstrate he performed well in the areas Harron specifically stated were significant to him in deciding who would best fill the OTS positions. Fourthly, Chalawsky asserts that SunOlin historically put younger people in OTS jobs. And lastly, Chalawsky points outs that Sun's reason is a post hoc rationale based on subjective criteria and unsupported by the information in Chalawsky's personnel file.

Viewing all of the evidence in a light most favorable to him as non-movant, the Court concludes that Chalawsky has presented sufficient evidence to create a genuine issue of material fact with regard to Sun's reasons for not offering him one

---

**1.** Sun characterizes the OTS positions as lower in level than the Area Superintendent job held by Chalawsky before the reorganization of SunOlin. Chalawsky also describes the OTS positions as lesser jobs.

of the two OTS positions. The numerous salary increase memos that discuss Chalawsky's performance contain favorable comments that *contradict* Harron's description of the essential skills Chalawsky was lacking. (*See* D.I. 26 at A–8–A–16; D.I. 27A at SA–6.) Harron characterized Chalawsky's alleged shortcomings as follows:

Q. What type of characteristics in your view was Mr. Chalawsky lacking?

A. Fred is not an aggressive, strong person. He's *not strong in hands-on*, the kinds of things you need to do to run the plant physically right down where the rubber meets the road, and *he's not strong as a leader* of those people. He's a phlegmatic individual. He's a nice person but he is not an aggressive change agent.

\* \* \* \* \* \*

Q. How about the operating technical specialist, was it required that those slots be filled with a person who has the characteristics you just gave me?

A. That person doesn't necessarily have to be a charismatic leader, for example, in the same sense as the person who manages the whole plant, like O'Rourke. That person has to be an aggressive person who looks around and *analyzes what all the data in the plant seems to be saying*, where they're standing compared to optimal conditions, where business changes occur, *examining what the economics are of those business changes*, whether it's a pricing change going on for refinery streams that would result in it being desirable to shut the unit down and steam air de-coke a heater, reducing through-puts at times when the value added wasn't there, *making changes to take advantage of economics*. That person is somebody that works with the operating people and the process engineers, has to be *looking for lots of ways*

*to improve things and has to be aggressive in getting there*, getting to those changes.

(D.I. 26 at A–37–A–39, FC Dep. at 42–44 [emphasis added].) The following are some of the pertinent comments included in the salary increase memos, which were written throughout the years by Chalawsky's various supervisors:

● Chalawsky has "[b]een a *leader* in the design and implementation of the skills evaluation program...." (Salary Increase Memo of 10–31–83, D.I. 26 at A–14 [emphasis added].)

● Chalawsky "[r]educed overtime ... for an *annual savings* of $18,000 ... [i]nitiated the concept of the removal of one stage from the 203/204 compressor wheel ... for and [sic] *annualized savings* of approximately $350,000." (*Id.* [emphasis added].)

● Chalawsky "has spent extra time and effort to learn the technological and personnel needs of this area and *has initiated* new *cost-control* methods. Cost *savings* generated during this period were *substantial*." (Salary Increase Memo of 9–25–86, D.I. 26 at A–16 [emphasis added].)

● "Fred has been personally responsible for the *initiation and follow up* of the Selexsorb Mol Sieve project which should permit *increased sales volume* ... The safety program in the ethylene unit will have reached an *all time record* for no lost-time accidents in early December...." (Salary Increase Memo of 10–13–87, D.I. 27A at SA–6. [emphasis added].)

Because one could reasonably view these and other comments contained in the salary memos as inconsistent with Sun's rationale that Chalawsky lacked necessary leadership skills and initiative, summary judgment would not be appropriate.[2]

---

2. Sun argues that even if Harron's testimony is somehow inconsistent with the salary memos, such a discrepancy is not sufficient to cast doubt upon Sun's articulated reason for not hiring Chalawsky because Harron was not the person who made the final hiring decisions. The exact extent to which Harron may have influenced the new management's trimming of the SunOlin workforce is not clear. Nevertheless, it is not disputed that Harron had *some* role. (*See, e.g.,* D.I. 27 at 8; D.I. 23A, JM Dep. at 33–35.) More to the point, however, Sun itself supports its articulated reason for not hiring Chalawsky with Harron's testimony regard-

Sun relies on *Healy v. New York Life Insurance Co.*, 860 F.2d 1209 (3d Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989), an ADEA case in which the Third Circuit upheld the district court's grant of summary judgment in the defendant-employer's favor. In *Healy,* the court concluded that the plaintiff-employee, who had been discharged pursuant to a reduction in force, had not created a factual dispute as to pretext merely by showing that generally he had performed competently in his previous positions. *See Healy,* 860 F.2d at 1220. The court reasoned that "the essence of a RIF [i.e., reduction in force] is that competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Id.*

Chalawsky's case is not, however, similar to *Healy.* In *Healy* the employer produced evaluations that specifically mentioned the plaintiff-employee's weaknesses. *See id.* at 1211. The employer was also able to point to a particular project that the employee did not complete satisfactorily. *See id.* at 1216. Chalawsky worked for Sun for two decades, but Sun has not produced a single negative comment from its files. Sun has also not pointed to any project or task that Chalawsky might have performed inadequately. *Healy,* therefore, does not help Sun.

## II. *Liquidated Damages* [3]

Liquidated damages are available in an ADEA action only if the alleged violation is proved to be "willful." 29 U.S.C. § 626(b); *see Dreyer v. Arco Chemical Co.*, 801 F.2d 651, 656 (3d Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). "Willful" means something more than just a violation of the ADEA, which the Third Circuit has noted "is almost always intentional." *Dreyer,* 801 F.2d at 657. What is needed is "some additional evidence of *outrageous* conduct." [4] *Id.* at 658 (emphasis added). Examples of such conduct would be "the systematic purging of older people from the employee staff ...," or "termination of an employee at a time that would deprive him or her of an imminent pension...." *Id.* Chalawsky has not pointed to any evidence that would substantiate his claim that Sun's alleged violation was somehow outrageous.

Chalawsky essentially argues that the requisite outrageousness is shown because Sun did not give full consideration to his "unblemished 20 year career at SunOlin." (D.I. 26 at 24.) To support this contention, Chalawsky underscores (*see id.* at 25) the following portion of the deposition testimony of SunOlin President John G. Harron: "Q. Have you looked at Mr. Chalawsky's other 17 or 18 salary increase letters? A. No. No. That's water under the dam." (*Id.* at A–36, JH Dep. at 51.) But the rest of Harron's deposition reveals that Chalawsky's historic performance was not only considered, but also well known to the SunOlin management.

ing Chalawsky's alleged deficiencies. (*See* D.I. 23 at 16–17 [citing JH Dep. at 42–44].)

The only other evidence on which Sun relies, to establish that Chalawsky "lacked the initiative as a problem solver and the leadership skills to fill any of the positions in the integrated operating department ..." (*id.* at 16), is the testimony of Joseph Mazzei, manager of the Marcus Hook refinery. (*See id.*) But Mazzei himself relied at least in part on Harron's characterization of Chalawsky. (*See* D.I. 23A, Exhibit 4, JM Dep. at 53.) Moreover, although Mazzei also states that he relied on the conclusions of his subordinate, Malcolm Flint, Mazzei does not explain on what Flint's opinions were based. (*See id.*) Sun has not offered Flint's testimony. Thus, while we know that Flint concluded Chalawsky was not right for the OTS jobs, we do not know why.

Harron's testimony regarding the skills Chalawsky allegedly lacked offers the only explana-

tion for why he was not hired. Hence, it is material.

3. Although his complaint initially requested both punitive and liquidated damages, plaintiff later conceded that punitive damages were not available in this action. (D.I. 26 at 24 n. 8.)

4. Because this case involves disparate treatment of an individual, the Supreme Court's *Thurston* formulation of willfulness—"if an employer knew or showed reckless disregard for the matter of whether its conduct violated the ADEA"— is not the governing standard. *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 57 (3d Cir.1989) (discussing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125–30, 105 S.Ct. 613, 623–26, 83 L.Ed.2d 523 (1985)).

Q. Who made the judgment that Mr. Chalawsky did not fill that bill?

A. I think several people over the years have basically realized that Fred is not as strong as perhaps he should have been. But he was a 20 some year employee of SunOlin and he was taken care of because of that. He was okay but he's not a star. And if you're looking for a star like O'Rourke would be, then he would not compete with O'Rourke.

Q. You said several people over the years had made the judgment that Chalawsky did not have these characteristics. Who were those people, if you know?

A. I came to those conclusions in the '73–77 era. My staff basically supported that.

Q. Who on your staff?

A. Jerry O'Rourke, Joe Young and Don Bobish, his supervisor.

(D.I. 26 at A–39, JH Dep. at 44.)

Thus, even assuming Chalawsky is correct in his statement that Harron was the final authority in the decision not to give him a job in the reorganized company,[5] Chalawsky has not produced any evidence to show his twenty year record was ignored. The single deposition comment referred to by Chalawsky is, as a matter of law, insufficient to allow a reasonable trier of fact to conclude that Sun deliberately and completely ignored the twenty year work history of a prospective employee. As shown by Harron's subsequent deposition comments, Chalawsky simply takes this comment out of context. More importantly, however, even if it were true that Chalawsky's work record did not receive the attention it merited, as a matter of law such conduct does not rise to the level of outrageousness, at least not on these facts. Not only is the *character* of the alleged harm by Sun not outrageous, but similarly, the *nature* and *extent* of the alleged harm is not "beyond that normally associated with an employee's discharge resulting

from age discrimination...." *Lockhart,* 879 F.2d at 58.

■ Chalawsky also contends that Sun's conduct should be considered willful because "Sun does not contest Chalawsky's qualifications for two OTS positions which were to survive the reorganization," and "[o]ne of those positions was still vacant when Chalawsky was terminated." (D.I. 26 at 25.) A similar claim was rejected in *Dreyer.* There, the Third Circuit noted that the fact that the employer failed to appoint the plaintiff, "to other available jobs filled by younger employees," was relevant "at most" to "a violation of the ADEA, but not [to] the outrageous conduct needed to distinguish a violation from willful action." *Dreyer,* 801 F.2d at 658–59.

In sum, Chalawsky has pointed to no evidence that could support a finding of outrageousness. Accordingly, the Court concludes that Sun is entitled to summary judgment on Chalawsky's liquidated damages claim.

### III. *State Law Claim*

■ In addition to his federal claims, Chalawsky asserts a pendent claim under Delaware law. He alleges that Sun violated 19 *Del.C.* § 711(a), by discriminating against him on the basis of age. Sun argues that Chalawsky has exhausted any rights he may have had under state law. The Court finds that Sun's challenge has merit.

Delaware law prohibits employment discrimination on the basis of "race, marital status, color, *age,* religion, sex or national origin...." 19 *Del.C.* § 711(a) (emphasis added). The statute directs the state Department of Labor ("DDOL") to investigate charges of discrimination. *See* 19 *Del.C.* § 712(b). It further provides that "[i]f the Department determines after such investigation that there is reasonable cause to believe that the charge is not true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the

---

**5.** Sun strongly disputes this assertion. (*See, e.g.,* D.I. 27 at 13.) In light of the Court's conclu-

sions, however, this dispute is not material.

respondent of its action." 19 *Del.C.* § 712(b).

If, however, the DDOL determines that "there is reasonable cause to believe that the charge is true," it will first attempt to secure voluntary compliance. 19 *Del.C.* § 712(c). If voluntary compliance cannot be attained, the DDOL will issue a complaint and institute proceedings before a review board. 19 *Del.C.* § 712(e). Following a hearing and the taking of evidence, the review board issues its findings and orders the appropriate relief. 19 *Del.C.* § 712(g). The review board's findings may be appealed in state court. *See* 19 *Del.C.* § 712(h).

In this case, the DDOL determined that Chalawsky's charge of discrimination could *not* be substantiated. (*See* D.I. 23A, Exhibit 5 at Dx7 [letter from DDOL].) Therefore, the subsequent hearing before a review board, from which Chalawsky could appeal in court, never took place.

Chalawsky argues that even though the statute does not authorize an independent cause of action or judicial review of the DDOL's findings, this Court should presume that the statute grants such a right because judicial review is not specifically prohibited. Chalawsky's reasoning is seriously flawed. Although the state legislature authorized judicial review of the *review board*'s findings, it also expressly insulated from review the DDOL's determination that a complaint should be issued because voluntary compliance would not be forthcoming. *See* 19 *Del.C.* § 712(e) ("If the Department determines, after attempting to secure voluntary compliance ... that it is unable to secure from respondent a conciliation agreement acceptable to the Department and to the person aggrieved, *which determination shall not be reviewable in any court*, the Department shall issue ... a complaint...." [emphasis added]). It therefore seems unlikely that a matter such as an initial determination of probable cause, which is also within the

DDOL's discretion, was meant to be reviewable in court. Likewise, given the unreviewable discretion granted to the DDOL, it seems unlikely a private right to sue—despite an unfavorable determination by the DDOL—was intended. This Court will not presume the Delaware legislature intended remedies it did not include in the statute. *Cf. Public Service Commission v. Diamond State Telephone Co.*, 468 A.2d 1285, 1300 (Del.1983).

The case relied on by Chalawsky is completely inapposite. *See Giles v. Family Court of Delaware*, 411 A.2d 599 (Del. 1980). *Giles* involved an appeal from a *review board* decision. *See id.* at 600–01. Chalawsky's case was not heard by a review board; it never made it beyond the first step in the Delaware statutory scheme because the DDOL found, following its investigation, that there was no probable cause to believe any violations had occurred. The Court concludes that Chalawsky does not have a right to sue under 19 *Del.C.* §§ 711–12 because he has exhausted his state remedies.

■ Chalawsky alternatively suggests that his right to challenge the DDOL's determination that no probable cause existed should be inferred from the state's Administrative Procedures Act, which attempts "to standardize the procedures and methods whereby certain state agencies exercise their statutory powers and to specify the manner and extent to which action by such agencies may be subjected to judicial review." 29 *Del.C.* § 10101. Even assuming that Chalawsky is correct that the Administrative Procedures Act applies to the DDOL's initial probable cause determination under the state employment discrimination law,[6] Chalawsky's alleged right to appeal the agency "decision" has expired.

The Act limits a party's right to seek judicial review of an agency decision to thirty days from "the day the notice of the decision was mailed." 29 *Del.C.* § 10142(b). The DDOL notice is dated

---

6. The Court does not express any opinion on this portion of Chalawsky's argument. *See* 29 *Del.C.* § 10142(a) ("Any party against whom a *case decision* has been decided may appeal such

decision to the Court." [emphasis added] ); *see also* 29 *Del.C.* § 10102(3) (defining "case decision").

June 22, 1988. (*See* D.I. 23A, Exhibit 5 at Dx7.) Chalawsky did not bring this suit until March 10, 1989 (D.I. 1), surely more than thirty days after the DDOL notice was mailed.[7] The state discrimination statute similarly limits the time period for seeking judicial review of review board findings. *See* 19 *Del.C.* § 712(h) (30 days after copy of review board order is received). Accordingly, Chalawsky's reliance on the state Administrative Procedures Act is untimely.

### CONCLUSION

Sun's motion for summary judgment as to all of Chalawsky's claims will be granted in part. Judgment will be entered in favor of Sun on both the liquidated damages claim and the pendent claim under Delaware law. With regard to the ADEA claim, however, Sun is entitled to summary judgment only as to three of the five positions Chalawsky alleges he was unlawfully denied; Chalawsky may proceed to trial with his claims as to the two OTS positions.[8] An appropriate order follows.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

For the reasons set forth in the Court's Memorandum Opinion entered in this action on this date, it is:

ORDERED, ADJUDGED, and DECREED that:

1. The motion for summary judgment filed by defendant Sun is granted in part and denied in part.

2. Judgment is hereby entered in favor of Sun, and against plaintiff Chalawsky, insofar as Count I of the complaint alleges a claim under the ADEA, 29 U.S.C. § 621 *et seq.*, with respect to the one Operating Superintendent and two Area Supervisor jobs described in the accompanying Memorandum Opinion.

3. Sun's motion for summary judgment on Count I of the complaint is hereby denied insofar as Chalawsky asserts an ADEA claim with respect to the two OTS jobs described in the accompanying Memorandum Opinion.

4. Judgment is hereby entered in favor of Sun on Chalawsky's claim for liquidated damages.

5. Sun's motion for summary judgment on Count II of the complaint, which alleges a claim under the FLSA, 29 U.S.C. § 216(b), is denied except to the extent stated in # 4 above.

6. Judgment is hereby entered in favor of Sun on Count III, Chalawsky's claim under Delaware law, 19 *Del.C.* § 711(a).

---

**7.** Chalawsky admits receiving notice of the DDOL's determination on June 22, 1988. (*See* D.I. 10 at ¶ 10.)

**8.** Count II of Chalawsky's complaint alleges a cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (*See* D.I. 10 at ¶ 15.) That portion of the FLSA authorizes a court to award various legal and equitable remedies, and is incorporated by reference into the ADEA. *See* 29 U.S.C. § 626(b) ("Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title...."). The FLSA remedy provisions do not, however, come into play until an ADEA violation is made out. *See id.* Therefore, Chalawsky's claim under section 216(b) survives to the extent that his ADEA claim does (with the exception that liquidated damages will not be available for the reasons set forth in this opinion).