**William R. JUST, Plaintiff,**

v.

**JAMES RIVER, II, INC., Defendant.**

**Civ. A. No. 90–330 MMS.**

United States District Court,
D. Delaware.

Feb. 19, 1992.

---

Kevin G. Healy of Childerston, Froehlich, Healy & Locke, P.A., Newark, Del., for plaintiff.

Sheldon N. Sandler of Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Scott S. Cairns of McGuire, Woods, Battle & Boothe, Richmond, Va., of counsel), for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This is an age discrimination case arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff, William R. Just ("Just"), contends defendant, James River, II, Inc. ("James"), discriminated against him when it eliminated his position following a reorganization at the plant. James has moved for summary judgment. This Court has jurisdiction under 28 U.S.C. § 1331.

### I.

Mr. Just began working for Crown Zellerbach, a predecessor subsidiary of defendant James River, II, Inc., in 1965. (Just Dep., App. to Pl.'s Answering Br. (Docket Item 34) [hereinafter "Dkt."] at A–11). Just began his career as a production supervisor, and then became an industrial engineer. He continued in this latter employ until 1974. (Just Dep., Dkt. 34 at A–12). Over the next three years he held the position of Production Systems Analyst. (Just Dep., Dkt. 34 at 13).

Plaintiff first began working for defendant's New Castle facility in 1977 as a Production Supervisor. (Just Dep., Dkt. 34 at A–14). Within a year, plaintiff became an Industrial Engineer and held that position until 1979 when defendant made him a

Systems and Materials Manager. (Just Dep., Dkt. 34 at A–14–15). This latter title is later referred to as a Planning and Materials Manager. Just held this position until he was terminated by defendant on March 13, 1989.

In 1988, the New Castle facility did not perform well. (Just Dep., App. to Def.'s Opening Br. (Dkt. 16) at A–6). The managers discussed the need to improve facility performance and retained consultants from other facilities to make recommendations for improvement. (Just Dep., Dkt. 16 at A–7). Defendant alleges it ultimately decided to cut operating costs and made plans to reorganize.

On March 13, 1989, Just met with Bill Froeber ("Froeber"), the New Castle Plant Manager and Barbara Tims ("Tims"), head of Personnel at the New Castle plant. (Just Dep., Dkt. 34 at A–15(a)). Froeber informed Just about the company's restructuring and the determination to eliminate his job. (Just Aff., Dkt. 34 at A–1, ¶ 4). At that same meeting, Just was told that while he had been considered for the position of Plant Controller, it was felt that he was not qualified for the position. (Just Aff., Dkt. 34 at A–1–2, ¶ 5). Plaintiff concedes he was not qualified for this position. (Pl.'s Answering Br., Dkt. 33 at 8).

Froeber stated he did not believe Just had the necessary background or experience to manage the other departments. (Froeber Dep., Dkt. 34 At A–29–33). Mr. Froeber agreed, however, that Just had the technical qualifications to take over John Lynch's position as head of another department. (Froeber Dep., Dkt. 34 at A–37–38). Mr. Lynch, however, never left his employ with James.

Plaintiff alleges he asked if any other positions were available, but was told there was no place for him at New Castle. (Just Aff., Dkt. 34 at A–2, ¶ 7). Defendant, on the other hand, alleges it extended Just the Press Supervisor's job during the meeting, but Just declined the offer. Just maintains he received the offer for the first and only time seven months later, in October 1989. (Just Aff., Dkt. 34 at A–3, ¶ 17). Just further maintains that at the time of the offer, discrimination charges had been pending before the Delaware Department of Labor ("DDOL") since the end of June 1989, and Just had recently secured a job with Gaylord Container Corporation. *Id.*

On March 16, 1989, Just met with Mr. Hadley and inquired about various positions at defendant's New Castle facility, specifically Services Supervisor, Engraving Coordinator and Press Supervisor. (Just Aff., Dkt. 34 At A–3, ¶ 14). According to Just, Hadley informed Just he could not assume any of these positions because in each of the positions he would be reporting to a former peer. *Id.* At the time of termination Just was forty-nine years old and had not missed a day's work in eight years. (Dkt. 34 at A–91–92).

Just was the only manager at the New Castle plant to be terminated in connection with the alleged down scaling of the New Castle plant in 1989. (Def.'s Response to Pl.'s Interrog., Dkt. 34 at A–82–85). He was also the only manager who was forty or older. (Tims Dep., Dkt. 34 at A–44). Of the forty-nine employees terminated by defendant in 1989, three were salaried personnel (including Just) all of whom were over forty years old. (Def.'s Response to Pl.'s Interrog., Dkt. 34 At A–82, 85).

In his brief, plaintiff prepared the following chart based on defendant's responses to interrogatories 14, 27, and 29. (Dkt. 33 at 7).

| Year | Total Employees Discharged | Salaried Employees Discharged | Salaried Employees Discharged Over 40 | Management |
|---|---|---|---|---|
| 1988 | 75 | 1 | (?) | 1 |
| 1989 | 49 | 3 | 3 | 1 |
| 1990 | 52 | 0 | 0 | 0 |
| 1991 | 4 | 1 | 1 | 0 |

Plaintiff urges the chart demonstrates what effect, if any, defendant's actions had on salaried personnel from 1988 through 1991. *Id.* The total salaried personnel employed by defendant in each of those years was in 1988 (65), 1989 (56), 1990 (60), and in 1991 (67). (Def. Response to Pl.'s Interrog., Dkt. 34 at A–85–86). From these statistics, plaintiff argues the alleged down scaling in the plant barely affected salaried employees. Moreover, since plaintiff's termination, defendant added or filled at least 26 salaried positions at its New Castle Plant. (Def.'s Response to Pl.'s Interrog., Dkt. 34 at A–81–82). Plaintiff further urges this fact appears to contradict defendant's alleged decision to down scale the plant and to cut operating costs at that time. (Dkt. 33 at 22). In its reply brief, defendant points out that a majority of New Castle's salaried work force has been over the age of forty from 1988 to the present. (Dkt. 38 at 10 (citing Def.'s Response to Interrogatories 29(d)).

When Just's job title was eliminated, Just's job duties were redistributed to a number of people. (Def.'s Opening Br., Dkt. 15 at 12). The Plant Controller (John Thomas, age 34) took responsibility for the planning department; the Plant Manager (Bill Froeber, age 38) took responsibility of Mr. Just's customer service responsibilities; and the Services Supervisor (Jim York, age 38) took responsibilities for the service department and purchasing. *Id.*

Prior to terminating Just, Froeber prepared a job elimination memo on Just ("Just Memo"). (Dkt. 34 at A–26, A–57). The memo refers to Just's date of birth in the left hand corner, "DOB–8/7/39." Under the heading titled "Legal Action," Mr. Froeber wrote, "Age Discrim." (Dkt. 34 at A–57). Froeber contends he considered Just's age only with respect to the poten-

tial for an age discrimination suit. Froeber acknowledges that the memo was prepared by him prior to terminating Just and that this memo was on his desk during the March 13, 1989 meeting when Mr. Just was terminated. (Dkt. 34 at A–34–35).

Plaintiff suggests there are inconsistencies as to whether Just's age was considered. While Froeber admitted he considered age at least with respect to a potential age discrimination suit, Dean Bidwell, the Acting Plant Manager, denied it was considered at all.[1] Froeber had consulted with Dean Bidwell to obtain his approval to terminate Just. (Froeber Dep., Dkt. 34 at A–39–40). Defendant, on the other hand, argues there were no inconsistencies between the two testimonies: both Bidwell and Froeber did not consider age in the decision to *terminate.*

Barbara Tims, through deposition testimony, indicated that at the time preceding Just's termination, Froeber possessed a document which Tims referred to as a "cheat sheet." (Tims Dep., Dkt. 34 at A–45–46). The "cheat sheet" was a one or two-page document with the names of all salaried employees, their dates of birth, date of hire, and their addresses and phone numbers. (Tims Dep., Dkt. 34 at A–46). According to Tims, sometime after Just was terminated, the "cheat sheet" was revised; in its current form it contains only names and addresses. (Tims Dep., Dkt. 34 at A–46–47).

When asked the purpose of including dates of birth on the "cheat sheet" Tims responded, "Well, we celebrated, we wished people happy birthday on their date of birth, and we had anniversary awards for their anniversaries." (Tims Dep., Dkt. 34 at A–47). Through affidavit, however, Just stated "birth dates and anniversaries

---

1. The following is an excerpt for Dean Bidwell's deposition:
   Q. Was age ever considered in your discussions with Bill Froeber as far as what to do with Bill Just?
   A. Absolutely not.
   Q. In any respect?
   A. In any respect.
   Q. The date of his birth ever come up?

A. Absolutely not.
Q. Not even in connection with determining whether or not he fit within the category of protected employees under age discrimination?
A. No.
Q. Are you sure about that?
A. Absolutely.
(Dkt. 34 at A–56).

were never celebrated as a regular job function of the personnel director, Barbara Tims or the plant manager." (Just Aff., Dkt. 34 at A–5, ¶ 22).

## II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

> The burden to demonstrate the absence of material fact issues remains with the moving party regardless of which party would have the burden of persuasion at trial. If, however, the nonmovant will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987) (in banc) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

Under the ADEA, "a plaintiff must prove by a preponderance of the evidence that age was 'a determinative factor' in the employer's decision." *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 (3d Cir.1984), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). The plaintiff need not prove "that age was the employer's sole or exclusive consideration but must prove that 'age made a difference' in that decision." *Id.* "A plaintiff may establish his case with direct evidence that the employer acted with discriminatory motivation. When direct evidence is

available, problems of proof are no different than in other civil cases." *Chipollini*, 814 F.2d at 897.

Direct evidence of a specific intent to discriminate, however, is not *required* as the proverbial "smoking gun" is usually not found in employment discrimination cases. *Id.* Instead, the Supreme Court has articulated a method of proof that relies on presumptions and shifting burdens of production. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093 (citations omitted); *see also Chipollini*, 814 F.2d at 897–98 (applying the *Burdine* analysis in an ADEA case); *Bartek v. Urban Redevelopment Auth. of Pittsburgh*, 882 F.2d 739, 742 (3d Cir.1989) ("While recent Supreme Court jurisprudence in the area of employment discrimination has been particularly volatile, no shadow has been cast on the *McDonnell Douglas/Burdine* allocation of burdens.").

### a. The Prima Facie Case

■ To make out a prima facie case, a discharged employee in an age discrimination case must show: (1) that he belongs to the protected class, i.e., is older than forty; (2) was qualified by training and experience for the job from which he was discharged; and (3) was replaced by a person sufficiently younger to permit an inference of age discrimination. *Sor-*

*ba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 202 (3d Cir.1987), *cert. denied*, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). Where the discharged employee's job is eliminated and he is, therefore, not replaced, the employee need only show that he was laid off from a job for which he was qualified while other workers not in the protected class were retained. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 n. 1 (3d Cir. 1988), *cert. denied*, [490] U.S. [1098], 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

*Turner v. Schering–Plough Corp.*, 901 F.2d 335, 342 (3d Cir.1990). With respect to the first and second prongs Just was a member of the protected class at all relevant times and was qualified by training and experience for the position from which he was terminated (Planning and Materials Manager). *See* (Def.'s Opening Br. at 7 (Dkt. 15)). With respect to the third prong, Just's job functions were redistributed to a number of people: The Plant Controller [age 34] took responsibility for the planning department. The Plant Manager [age 38] took responsibility for plaintiff's customer service responsibilities, and the Services Supervisor [age 38] took responsibility for the service department and purchasing. (Def.'s Opening Br. at 12). Those who were retained and took over Just's position were all under forty and thus outside the protected class. Accordingly, under the criteria set forth in *Turner*, Just has made out his prima facie case.

■ Defendant has argued, however, that to establish a prima facie case in the context of a reduction in force, plaintiff needs to prove that he was qualified for another available job with that employer; qualification for plaintiff's current job is not enough. *See* (Def.'s Opening Br., Dkt. 15 at 8) (citing *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir.1990)). While the Eleventh Circuit may well demand more exacting proof to establish a prima facie case, it is clear this Circuit does

not. *See Turner*, 901 F.2d at 342; *Billet v. CIGNA Corp.*, 940 F.2d 812, 816 n. 3 (3d Cir.1991); *cf. Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 n. 1 (3d Cir.1988) (rejecting the argument that to establish a prima facie case in the context of a reduction in force, a plaintiff must prove that after his/her discharge a less qualified employee was retained in the same position), *cert. denied*, 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989). Moreover, the Court of Appeals for the Third Circuit has observed, "because the prima facie case is easily made out, the prima facie case is rarely the focus of the ultimate disagreement. Rather, 'the exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a non-discriminatory reason for the [discharge].'" *Healy*, 860 F.2d at 1214 n. 1 (quoting *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 343 (D.C.Cir. 1983), *cert. denied*, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983)).

b. The Legitimate Non–Discriminatory Reason

■ Since Just can establish a prima facie case under prevailing Third Circuit law, the burden shifts to James to "to articulate some legitimate non-discriminatory reason" for the discharge. James contends it made a decision to scale down the size of the New Castle facility and simplify the product mix to restore profitability. "The entire plant was reorganized, resulting in the elimination of eight salaried positions, reassignment of five positions, one promotion, three increased responsibilities and elimination of thirty hourly positions. (*See* Defendant's Response to Plaintiff's Interrogatory No. 5). Plaintiff's existing job was eliminated and he, like many other employees, was let go." (Dkt. 15 at 12).[2] Because James has proffered a legitimate, non-discriminatory reason for terminating plaintiff, the burden now shifts back to Just.

---

**2.** The Court, for purposes of this motion, assumes without deciding that there was a reduc-

tion in force.

### c. Pretext

To establish pretext, Just must produce "sufficient evidence to permit a reasonable trier of fact to infer that [James] was actually motivated by a discriminatory reason, and not by the legitimate reason it claims.... [Just] can also meet his burden by merely proving that the reasons offered by [James] are 'pretextual,' somehow inconsistent or otherwise unworthy of belief." *See Chalawsky v. Sun Ref. & Mktg. Co., Inc.*, 733 F.Supp. 791, 795 (D.Del.1990) (citing *Chipollini*, 814 F.2d at 898). Defendant urges plaintiff has not met his burden.

A factual dispute exists over whether Just was offered the Press Supervisor position. According to Froeber, after Just's position was eliminated, Froeber gave Just two options: 1) accept the Press Supervisor's position or 2) termination. Just maintains, however, that Froeber never offered him the Press Supervisor job until several months later. Defendant urges this factual dispute is not enough to permit a reasonable trier of fact to infer that James was actually motivated by a discriminatory reason and not by the legitimate reason of plant reorganization.[3] Clearly, when an employee's job is eliminated due to plant reorganization and another job is available for which that same employee is qualified, the company need not necessarily offer that job to the employee,[4] especially if there are other qualified employees vying for the same. If, however, an employee's job is eliminated due to plant reorganization and another job is available for which that same employee is admittedly qualified *and* the employer conceals the fact that the job is available after the employee has specifically inquired about the job, a jury might then reasonably infer the employer's proffered reason of plant reorganization is unworthy of belief. This latter situation resembles the facts of this case.

Additionally, plaintiff has argued the "cheat sheet" is some evidence supporting pretext. The "cheat sheet" was a one or two-page document with the names of all salaried employees, their dates of birth and hire, and their addresses and phone numbers. Barbara Tims, Personnel Supervisor, testified through deposition that Bill Froeber possessed the "cheat sheet" during the time plaintiff was terminated. While mere awareness of a plaintiff's age does not show that these facts entered into an employer's decision, plaintiff urges Tims' proffered explanation for the existence of the "cheat sheet" is wholly unworthy of belief and, therefore, the "cheat sheet" in this case is some evidence of pretext. Tims explained the birth dates were included on the list in order to wish people happy birthday; dates of hire were listed for anniversary purposes. While plaintiff does not claim birthdays and anniversaries were never celebrated, he does aver they "were never celebrated as a regular job function of the Personnel Supervisor, Barbara Tims, or the Plant Manager [Bill Froeber]."[5] If a jury chose not to believe Tims' explanation for the existence of the "cheat sheet," it might then reasonably infer the list was used improperly in the decision to terminate Just.

While the evidence offered by plaintiff in this case is far from overwhelming, the Court holds plaintiff has put forth enough

---

**3.** Defendant argued since it is undisputed that plaintiff was offered the Press Supervisor position in October 1989, it is irrelevant whether plaintiff was offered the same position in March. Specifically, defendant argues plaintiff incurred no damages up to the point of the undisputed offer since plaintiff was still receiving severance pay. Plaintiff notes, however, that at the time of the undisputed offer, plaintiff had pending DDOL discrimination charges filed against the defendant. Therefore, whether plaintiff was offered the Press Supervisor position in March is relevant to defendant's proffered reason for termination.

**4.** *See Stacey v. Allied Stores Corp.*, 768 F.2d 402, 409 (D.C.Cir.1985) ("[W]e can discern no requirement whatever in the ADEA that an employer seek to place in another position an employee whose age brings him or her under the ADEA's protective shield when that employee is being terminated for nondiscriminatory reasons.")

**5.** Defendant also argues plaintiff has been unable to establish any "cheat sheet" was used at all in determining whether to terminate Just. If there was not an arguably suspect explanation for the existence of the list, defendant's point might be well taken.

**1152**

evidence to survive summary judgment. If a jury were to credit Just's testimony that he was not offered the Press Supervisor position during March, 1988 and to disbelieve the proffered explanation of the "cheat sheet," this, along with the fact that Just was the only manager terminated because of the restructuring despite his admitted qualifications for the Press Supervisor position, could support a verdict in his favor.[6]

### III.

For the reasons set forth above, defendant's motion for summary judgment will be denied. An appropriate order will issue.

---

**6.** At oral argument, defendant withdrew its request for attorney's fees.