Susan SERPE, Plaintiff-Appellant,

v.

FOUR–PHASE SYSTEMS, INC.,
Defendant-Appellee.

No. 82–4716.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1983.

Decided Oct. 18, 1983.

Karen J. Kubin, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for defendant-appellee.

Mary C. Dunlap, San Francisco, Cal., for plaintiff-appellant.

Before TANG and REINHARDT, Circuit Judges and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge:

Susan Serpe (Serpe), plaintiff and appellant, brought this Title VII (42 U.S.C. § 2000e et seq.) action against Four-Phase Systems, Inc. (Four-Phase), defendant and appellee, alleging several acts of sex discrimination. The trial court made findings and conclusions, and on the basis of them a judgment was entered for defendant-appellee. This appeal followed.

The district court's findings of fact disposed of all but one of Serpe's claims on the merits. The evidence was in conflict, there was substantial evidence supporting the court's findings, and they cannot be disturbed on appeal.

The one exception concerns a claim by Serpe that, because she is a woman, Four-Phase would not transfer her from the technical division to the sales division. Employees in the sales division received greater compensation than those at a comparable level in the technical division. The district court did not reach the merits of this claim but denied it on the grounds that it had not been presented to the Equal Employment Opportunity Commission (EEOC) and that in any event it was time-barred.[1]

In a Title VII action, the subject matter of the court's jurisdiction extends only to those claims made before the EEOC. *Shah v. Mt. Zion Hospital & Medical Center*, 642 F.2d 268 (9th Cir.1981). The EEOC charge in this case contained the following language:

I believe that I have been discriminated against because of my sex, Female, in that:

. . . .

B. I believe my duties and responsibilities were essentially the same as Donald Larson, International Marketing Manager, but I was paid less than he.

C. The title Account Manager is reserved to those persons who are assigned to provide exclusive sales and technical support to a single customer. During the summer of 1979 one of my accounts asked that a single company representative be assigned to service them exclusively. I applied for and was assigned as the sole individual servicing this account. However, I was denied the title. My duties and responsibilities were essentially the same as William Hogan and Frank Marinelle: classified as Account Managers, however, they were paid more than me. In Nov., 1979 I requested that my title be changed to Account Manager, Martin [Toomey] denied my request.

D. I was never paid commission, however, I believe Donald Larson and other males employed in International Marketing were.

. . . .

I believe the above named company discriminates against females as a class in that:

A. When I resigned the company employed approximately 200 sales peo-

---

* The Honorable Russell E. Smith, Senior United States District Judge, District of Montana, sitting by designation.

1. Serpe did claim that there was one refusal to transfer her which was not time-barred. On conflicting evidence, the court found against Serpe on the merits of that claim. We do not disturb that finding.

ple of these approximately 12 were females.

B. Males with sales experience, are classified as Marketing Sales Representatives, males with little or no sales experience are classified as Associate Sales Representatives. However, with the exception of one or two females, females, are classified as Associate Sales Representatives without regard to their sales experience.

C. The company uses position classifications as a subterfuge for paying males more than females . . . .

In *Kaplan v. International Alliance of Theatrical & Stage Employees,* 525 F.2d 1354 (9th Cir.1975), the court said:

The EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462–63 (5 Cir.1970); *Cox v. United States Gypsum Co.,* 409 F.2d 289, 290 (7 Cir. 1969); *Antonopulos v. Aerojet-General Corp.,* 295 F.Supp. 1390, 1395 (E.D.Cal. 1968). One function of the administrative charge is to provide information to enable the EEOC to determine the scope of the alleged violation and to attempt conciliation. *Jenkins v. United Gas Corp.,* 400 F.2d 28, 30 n. 3 (5 Cir.1968).

525 F.2d at 1359. *Kaplan* quoted the following language from *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970): " '[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.' " 525 F.2d at 1359.

■ The charge made to the EEOC in this case did not state in so many words that Four-Phase had refused to put Serpe in sales because she is a woman, but, in our opinion, an investigation of the charges made in the quoted language would have revealed plaintiff's claim that she did request transfers and that, because she is a woman, her requests were denied. We think that the EEOC claims are sufficient

to sustain the court's subject-matter jurisdiction.

■ We then reach the limitations question. Plaintiff testified that she made several requests for transfers and that they were all denied. She testified that she was told by people in management that she could not go into sales because she is a woman. From this and other evidence, the court might have concluded that there was a policy which prohibited the employment of women in the sales department.

There is no doubt but that, in the case of a single isolated act as distinguished from a systematic policy of discrimination, the statute commences to run when a lay person should have perceived discrimination occurring. An act of firing or refusing to hire is a discrete act and starts the statute to run.

But, where there is a systematic policy of discrimination, the rule, with respect to employees who remain employed but claim that their status has been adversely affected by the discriminatory policy, is as follows:

An employer charged with maintaining an unlawful transfer system, for example, may argue that the plaintiff did not apply for a transfer within the statutory time limits preceding the filing and therefore has no cause for complaint. *This issue is often resolved by theorizing that a challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future.*

*Elliott v. Sperry Rand Corp.,* 79 F.R.D. 580, 586 (D.Minn.1978) (emphasis added).

The doctrine expressed in the emphasized language was quoted with approval and applied in *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.1982), and *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 761 (9th Cir.1980). In *Williams* the court stated that the trial court had erred "in concluding that the continuing violations doctrine did not apply to discriminatory placements or denials of promotions." 665 F.2d at 924.

Both *Williams* and *Reed* involved promotions. It may be, as the district court held, that there is some difference between failure to promote and failure to transfer if the rule is as stated by the district court: " 'The focus is on what event, in fairness and logic, should have alerted a lay person to act to protect his right or when he should have perceived discrimination occurring.' " *Serpe v. Four Phase Systems, Inc.,* No. C–82–0464–WWS (Dist.N.Cal., Nov. 22, 1982), quoting *Elliott,* 79 F.R.D. at 585. If, however, we judge the system, as we must, in terms of what "deters the employee from seeking his full employment rights," we are unable to distinguish a systematic refusal to transfer from a systematic refusal to promote.[2] If the systematic discrimination exception does not apply here, it is not because a transfer can be distinguished from a promotion, but because there was no systematic discrimination. The district court did not make a finding of fact on that issue.

By nothing said in this opinion have we intended to comment on the validity of the plaintiff's claim based on a refusal to transfer or on the question of whether there was a systematic discrimination.

The judgment is affirmed as to all claims except the claim of discrimination based on the refusal to transfer Serpe to the sales division. As to that claim the judgment is reversed with directions to the district court to determine whether, as a matter of fact, there was a systematic refusal to place women in sales positions. If the court finds in the affirmative on that issue, it shall then decide the refusal to transfer claim on its merits.

---

2. In *London v. Coopers & Lybrand,* 644 F.2d 811 (9th Cir.1981), involving a discharge, this language appears:

> Absent special circumstances, a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations and the natural effects of the alleged discriminatory act are not regarded as "continuing."

644 F.2d at 816. Since this case involved a discharge, what was said as to promotions and

transfers is dictum. We further believe that, at least insofar as transfers and promotions are concerned, the statement was intended to apply only to isolated acts that occur on only one specific occasion *and* are in no way the result of any general policy of discrimination. In any event, the proper rule with respect to continuing violations both in promotion and transfer cases is that set forth in *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918 (9th Cir.1982).