Marjorie TYSON, Louise Davis and Gladys Babcock

v.

SUN REFINING AND MARKETING COMPANY.

Civ. A. No. 82–4994.

United States District Court, E.D. Pennsylvania.

Nov. 21, 1984.

---

Joseph R. McFadden, Jr., Media, Pa., for plaintiffs.

Lynne Delanty Spencer, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Presently before me is defendant Sun Refining and Marketing Company's ("Sun") motion for reconsideration or clarification of the May 15, 1984 order of this court which denied its motion for summary judgment. Although I find no reason to reconsider that decision, I will use this opportunity to set forth a more complete analysis of the issues presented by defendant's summary judgment motion.

Plaintiffs in this employment discrimination case allege that they were the victims of sex discrimination while employed at the Sun Marcus Hook refinery. All of the plaintiffs are long-term employees of that facility. They allege that they were denied promotion to the positions of permanent shift foremen and temporary shift foremen, and were denied overtime pay as a result of the discriminatory practices of Sun. In its motion for summary judgment, Sun argued on a number of grounds that plaintiffs could not prevail. It argued that plaintiffs were time barred from asserting claims based on a number of the alleged acts of discrimination. Sun also contended that there exist no genuine issue of material fact with regard to the merits of plaintiffs' claims. For the reasons set forth below, I find that there is no reason to reconsider my rejection of these arguments.

*Timeliness*

Defendant alleges that plaintiffs' claims are at least partly time barred. Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") in March, 1978. They rely in their complaint on incidents that occurred as far back as 1966. Defendant asserts that all reliance on events occurring more than 180 days prior to the filing of the charges is time barred. *See Bronze Shields, Inc. v. New*

*Jersey Dep't of Civil Serv.*, 667 F.2d 1074, 1080 n. 14 (3d Cir.1981) (180 day statute of limitations applies in Title VII case where charges first brought to EEOC). Plaintiffs contend that their reliance on events occurring before 180 days before March, 1978 is appropriate under a "continuing violation" theory.

 It is axiomatic that in order to state a claim under Title VII, a plaintiff must first file timely charges of discrimination. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Under 42 U.S.C. § 2000e-5(e), charges must be filed within 180 days after the allegedly unlawful employment practice took place. The courts have, however, long recognized an exception to this rule in cases in which the plaintiff has alleged a "continuing violation" of the Act. To proceed under this theory, plaintiffs must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitation] period." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C.Cir.1982) (*quoting* B. Schlei & P. Grossman, Employment Discrimination Law 232 (Supp.1979).

In determining the timeliness of plaintiffs' claims I must first identify the "unlawful employment practice" of which plaintiffs complain. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 498 (1980); *Bronze Shields* at 1083. Read in the light most favorable to plaintiffs, their claim is that Sun engaged in a systematic practice of denying promotion opportunities and other benefits of employment to plaintiffs because of their sex. They have identified a number of specific manifestations of this pattern in their complaint. These include the denial of the opportunity to be promoted to the position of permanent shift foremen, the denial of the opportunity of becoming temporary shift foremen, and the

discriminatory administration of overtime benefits.

Defendant claims that plaintiff cannot, given the facts of this case, proceed under a continuing violation theory. Sun makes this argument by dividing plaintiffs' entire case into three related cases: one challenging the selection of permanent shift foremen, the second challenging the selection of temporary shift foremen, and the third challenging the administration of overtime pay at the Marcus Hook refinery. If one accepts this initial assumption, then Sun's arguments do indeed appear to be substantial. I think, however, that it is incorrect to take that first step.

In general, courts have been more receptive to claims of continuing violations when advanced in connection with denials of promotions or transfers than in many other contexts. *See, e.g., Patterson v. American Tobacco Co.*, 586 F.2d 300 (4th Cir.1978); *Muka v. Nicolet Paper Co.*, 20 Empl.Prac. Dec. (CCH) ¶ 30, 265 (E.D.Wis.1979); *Jacobs v. Bd. of Regents*, 473 F.Supp. 663, 668 (S.D.Fla.1979); *Miller v. Miami Prefabricators*, 438 F.Supp. 176 (S.D.Fla.1977); *Corbin v. Pan American World Airways*, 432 F.Supp. 939 (N.D.Cal.1977).

In *Serpe v. Four-Phase Systems, Inc.*, 718 F.2d 935, 937 (9th Cir.1983), the court, in discussing the plaintiffs attempt to assert a continuing violation theory in a case involving refusal to transfer [1] stated:

But, where there is a systematic policy of discrimination, the rule, with respect to employees who remain employed but claim that their status has been adversely affected by the discriminatory policy, is as follows:

An employer charged with maintaining an unlawful transfer system, for example, may argue that the plaintiff did not apply for a transfer within the statutory time limits preceding the filing and therefore has no cause for complaint. *This issue is often resolved by theorizing that a challenge*

---

**1.** The *Serpe* court was discussing a claim involving discrimination in transfer decisions. It found those decisions indistinguishable from decisions regarding promotions and therefore felt free to apply caselaw developed in the promotion context. *See Serpe* at 938.

*to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future.*

*Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 586 (D.Minn.1978) (emphasis added).

In the instant case, plaintiffs have argued that there exists a broad policy of discrimination at the Sun Marcus Hook refinery. They allege that they have been denied promotions repeatedly, partly as a direct result of the maintenance of a discriminatory testing system, and partly as a result of a "sequential, connected course of activity designed to promote and maintain an employment atmosphere in which the male employees were given preferential economic treatment through overtime assignments and job promotion." Plaintiffs' brief in opposition to defendant's motion for summary judgment at 11. Plaintiffs argue that the facts of this case will demonstrate that discrimination against women was a "standard operating procedure." *See Jewett v. International Telephone Corp.*, 653 F.2d 89, 91–92 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

In *Cedeck v. Hamiltonian Fed. Sav. & L. Ass'n*, 551 F.2d 1136 (8th Cir.1977), the court was faced with a situation similar to the one presented by the instant case. The plaintiff therein sued her employer alleging sex discrimination in her failure to be promoted and in her eventual discharge. The defendant argued that plaintiff's charge was not timely in that it had not been filed within 180 days of the date on which a male had been promoted to a position for which plaintiff had applied. The district court agreed. In reversing this decision, the Eighth Circuit refused to characterize plaintiff's claim as a challenge to a failure to promote plaintiff to one "particular job at a particular time." *Id.* at 1137. Rather,

the court cast the plaintiff's claim as one "concerned not only with her failure to be promoted to the manager's position but also with her overall upward mobility in the Hamiltonian organization. In this light, the alleged unlawful employment practice was a continuing one ...." *Id. See also Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982) (court upholds use of continuing violation theory in case involving differential workload allegedly evidence of sex discrimination).

*Valentino v. United States Postal Service*, 674 F.2d 56 (D.C.Cir.1982) cited by Sun is not inconsistent with the conclusion that plaintiffs have asserted a valid continuing violation argument. In that case, plaintiff was the ostensible representative of a class. She alleged that the defendant had maintained a discriminatory promotion policy that had denied women promotions. The policy had been changed by the defendant before the 180 day period began to run, and plaintiff conceded that the new policy was nondiscriminatory. The court in *Valentino* found that under the circumstances of that case, plaintiff could not proceed on a continuing violation theory in order to reach out to events that took place under the replaced promotion policy. *Valentino* is readily distinguished from the instant case. It was a class action challenging the allegedly discriminatory promotion practices and policies of the defendant. These practices ceased entirely when the new system was adopted. In the instant case, individual plaintiffs challenge not only promotion decisions, but also the maintenance of allegedly discriminatory overtime policies as manifestations of a larger system of discrimination. Even if, as defendant argues, the policy regarding the method by which promotions to the position of permanent shift supervisor was changed in 1973, there were other ongoing acts of discrimination alleged by plaintiffs which have taken place during the entire time period in question.[2]

---

2. Defendant contends that plaintiffs' claims based on pre-February 1978 temporary shift foremen promotions are also time barred because plaintiffs should have been aware that they were not on eligibility lists submitted to their union pursuant to the terms of the applica-

Closer to the present case than *Valentino* is *Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757 (9th Cir.1980). In that case, the plaintiff challenged the promotion practices of her employer. The district court had found that she was time barred from asserting claims based on promotion decisions made more than 180 days before she filed EEOC charges. In reversing this determination, the Ninth Circuit stated:

The complaint should not be read so narrowly. Her allegations included a sweeping attack on Lockheed's systems of promotion, compensation and training. She alleged that the violations took place throughout her service at Lockheed and until the day she filed her complaint.

Reed alleges, for example, that under Lockheed's promotion practice the company approached worthy candidates to ask them if they wished promotion. The employee need not seek it. If true, (and there is at least a genuine issue of fact as to the truth of this claim) and if it is also true that Reed was not promoted for 25 years, then each day without promotion constituted a new violation of Title VII, assuming that similarly situated males were promoted with more regularity.

The fact that Reed sought to establish her case by listing specific incidents antedating the limitations periods is irrelevant. The 1963, 1969 and 1972 events are not the basis of her charge of discrimination. They are but evidence that a policy of discrimination pervaded Lockheed's personnel decisions. The violations of which she complains occurred each day of her employment, including the days within the appropriate limitations period.

*Id.* at 759–60.

I believe that in the present case, plaintiffs have alleged a systematic policy of sex discrimination and claims related to incidents which occurred more than 180 days before the filing of EEOC charges in 1978 are not time barred.

*Issues of Fact*

Defendant alleges that plaintiffs are unable to meet their burden of establishing a *prima facie* case of discrimination under either a disparate impact or a disparate treatment theory with regard to their theories of discrimination in promotion or overtime pay assignments. Once again, I conclude that there is no reason to reconsider my rejection of defendant's arguments.[3]

■ Under *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981) and *McDonnel Douglas v. Green*, 411 U.S. 792, 803–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), in order to proceed under a disparate treatment theory plaintiff must be able to establish four elements:

1. she is a member of a protected group under Title VII;

2. she was qualified and applied for the promotion in question;

3. although a promotion vacancy existed she was not promoted; and

4. similarly situated males with comparable qualifications were promoted at the time her request for promotion was denied.

There is obviously no dispute as to the first element. The defendant contends, how-

---

ble collective bargaining agreement. This argument is also without merit. Plaintiffs have not been shown to have actual knowledge of the fact that their names were not on those lists and have not even been shown to have known that these lists existed. *Bronze Shields* is therefore inapposite, *see* 667 F.2d at 1083 n. 23, as is *Hood v. New Jersey Dep't of Civil Serv.*, 680 F.2d 955, 958–59 (3d Cir.1982).

**3.** I have examined plaintiffs' claims with a great deal of care and I must agree with defendant's

argument that plaintiffs have failed to assert a disparate impact claim. In the case of both permanent shift foremen and temporary shift foremen, plaintiffs, as I understand their complaint, do not allege that they have been discriminated against as a result of the operation of facially neutral objective criteria. Rather, they contend that they were denied the opportunity to participate in the objective system in the first instance. *See* B. Schlei & P. Grossman, Employment Discrimination Law 2, 80–190 (1983).

ever, that plaintiffs cannot meet their burden under the remaining elements.

It is not my place to decide the merits of this case in the context of deciding a motion for summary judgment. My inquiry is limited to the determination whether there exist any genuine issues of material fact. I have reviewed the memoranda of law and the affidavits and other material submitted by the parties in connection with the motion for summary judgment. I conclude that there do exist genuine issues of material fact with regard to whether or not plaintiff can prevail under a disparate treatment theory. I think that under the circumstances of this case and its present procedural posture, it would be inappropriate to grant summary judgment. An appropriate order follows.