**Faquita E. WRIGHT, Plaintiff,**

v.

**ICI AMERICAS INC., Defendant.**

**Civ. A. No. 91-520 LON.**

United States District Court,
D. Delaware.

Jan. 7, 1993.

John J. Sullivan, Jr., Law Offices of Sylvia E. Hall, Wilmington, DE (Kathleen M. Smith, Law Offices of Sylvia E. Hall, Pennsville, NJ, of counsel), for plaintiff.

A. Richard Winchester, of ICI Americas Inc., Wilmington, DE (Steven R. Wall, and Stacy K. Weinberg, of Morgan, Lewis & Bockius, Philadelphia, PA, of counsel), for defendant.

## OPINION

LONGOBARDI, Chief Judge.

### I. NATURE AND STAGE OF PROCEEDINGS

On September 20, 1991, Plaintiff Faquita Wright brought suit against the Defendant

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Docket Item ("D.I.") 1. Plaintiff later filed an Amended Complaint on January 30, 1992, D.I. 8, demanding a jury trial, compensatory and punitive damages and expert fees pursuant to the Civil Rights Act of 1991 which amended Title VII and was enacted into law on November 21, 1991. Public Law 102–166, Nov. 21, 1991, Section 101 *et seq.*

In Count I of her Amended Complaint, Plaintiff, a black female, alleges that the Defendant engaged in a pattern of conduct, practices and actions during the course of her eleven year tenure as an employee for the Defendant that constituted disparate treatment of the Plaintiff in violation of Title VII. D.I. 8 at 5. In Counts II–VI of the Complaint, the Plaintiff raises various state law claims arising out of the same nucleus of operative facts as the Plaintiff's federal claim. All the state law claims are closely tied to the alleged discrimination engaged in by the Defendant and are, therefore, properly tried in one proceeding. Accordingly, the jurisdiction of this Court to hear those claims is proper under the federal provision for supplemental jurisdiction. 28 U.S.C. § 1367.[1]

Specifically, Count II charges that Defendant's alleged discriminatory conduct constitutes disparate treatment of Plaintiff in violation of Title 19, Chapter 7 of the Delaware Code. D.I. 8 at 6. Count III raises a common law breach of contract claim arising out of Defendant's alleged (1) failure to provide Plaintiff an equal opportunity for promotion and/or transfer and (2) failure to deal with Plaintiff in good faith regarding promotions and evaluations of her abilities as an employee. *Id.* at 7. Counts IV–VI raise common law tort claims in which Plaintiff alleges breaches of duties by the Defendant for failing to establish and/or administer (1) a non-discriminatory system for promotions and transfers, (2) a non-discriminatory system for evaluating the performance of employees and (3) a non-discriminatory system

whereby employees directly or indirectly responsible for the promotion and/or transfer of other employees are reasonably supervised. *Id.* at 8–11.

Presently before this Court is a motion captioned Defendant's Motion for Partial Summary Judgment. D.I. 30. As set out herein, Defendant seeks partial summary judgment as to Count I of the Complaint, *Id.* at 10–16, while seeking summary judgment in the entirety as to Counts II–VI of the Complaint. *Id.* at 16–22. Additionally, Defendant has filed a Motion to Strike Plaintiff's Demand for a Jury Trial, for Compensatory and Punitive Damages and for Expert Fees. D.I. 28.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact that can be resolved at trial and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Materiality is determined by the substantive law that governs the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A dispute is "genuine" only if a reasonable jury could return a verdict for the nonmoving party. *Id.* Following a determination that no genuine dispute of material facts exists, the moving party must demonstrate that it is entitled to judgment as a matter of law.

Once the moving party has made and supported its motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."

---

**1.** Defendant has not raised a jurisdictional challenge as to this Court's ability to resolve the state law claims.

Fed.R.Civ.P. 56(e). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

Additionally, any doubts as to the existence of genuine issues of fact will be resolved against the moving party and all inferences to be drawn from the material it submits will be viewed in the light most favorable to the party opposing the motion. *Norfolk Southern Corp. v. Oberly*, 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd*, 822 F.2d 388 (3rd Cir.1987). If the evidentiary record supports a reasonable inference that the ultimate facts may be drawn in favor of the responding party, then the moving party cannot obtain summary judgment. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (3rd Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. COUNT I—TITLE VII CLAIM

■ As indicated, Count I of the Amended Complaint is raised by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964. In order to proceed under Title VII, a plaintiff who alleges employment discrimination must file a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the occurrence of the alleged unlawful act or within 180 days if the individual is in a state that has no administrative agency to resolve discrimination claims. 42 U.S.C. § 2000e–5(e). Both parties agree that because Delaware has such an agency, the 300–day filing time is the appropriate limitations period. The general rule is that any discriminatory act occur-ring outside the applicable charge-filing limitations period is considered "... merely an unfortunate event in history [having] no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977).

In this case, Plaintiff filed a charge of employment discrimination with the EEOC on August 31, 1988. D.I. 8 at 1, ¶ 2. Accordingly, the 300–day limitations period for the filing of such a charge extended back to November 6, 1987. D.I. 30 at 11. Thus, under the general rule, the only alleged denials of promotions and transfers that are timely for purposes of Plaintiff's Title VII action are those occurring after November 6, 1987.[2]

For purposes of deciding this motion for summary judgment, the issue the Court confronts is whether those claims raised by the Plaintiff arising outside the applicable charge-filing limitations period fall within the judicially created "continuing violation" exception thereby making them timely. *See Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) (recognizing the validity of the continuing violation doctrine in Title VII cases); *Bronze Shields, Inc. v. N.J. Dept. of Civil Serv.*, 667 F.2d 1074, 1081 (3rd Cir.1981) (Third Circuit expressly recognizes Congressionally approved continuing violation theory in Title VII cases so as to provide lay employees bringing charges the maximum benefits of Title VII's civil rights protections) (citations omitted), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982).

■ To prevail on a continuing violation theory, "the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the [plaintiff's class] was the company's 'standard operating procedure.'"

---

**2.** Plaintiff has alleged seven specific instances in which she was denied a promotion or transfer during her employment with the Defendant because of her race. See D.I. 31 at A–2–A–3, Exhibit B. Defendant contends that the only charges of employment discrimination that are timely for purposes of Plaintiff's Title VII action are those allegedly occurring on June 13, 1988, July 26, 1988, and August 19, 1988. D.I. 30 at 11. Consequently, Defendant seeks summary judgment only as to those claims of discrimination allegedly occurring in 1979, 1986 and January of 1987. *Id.*

*Jewett v. International Tel. and Tel. Corp.*, 653 F.2d 89, 91–92 (3rd Cir.) (quoting *Teamsters v. United States*, 431 U.S. 324, 326, 97 S.Ct. 1843, 1850, 52 L.Ed.2d 396 (1977)), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). *Accord, E.E.O.C. v. Westinghouse Elec. Corp.*, 725 F.2d 211, 218 (3rd Cir.1983) (Plaintiff may not rely on the continuing violation theory to advance claims about isolated instances of discrimination concluded in the past even though the effects persist into the present); *Erdmann v. Board of Educ. Union County Regional High Sch. Dist. No. 1*, 541 F.Supp. 388, 392 (D.N.J.1982) ("Repeated denials of employment or promotion to an individual applicant ... do not constitute a continuing violation unless the denials were based upon some allegedly discriminatory practice, policy or procedure utilized by the employer in making its employment decisions, ...").

■ In determining whether the Plaintiff has made the necessary showing of a continuing violation, the District Court must first "identify precisely the 'unlawful employment practice' of which [plaintiff] complains." *Bronze*, 667 F.2d at 1083 (quoting *Ricks*, 449 U.S. at 257, 101 S.Ct. at 503). Although Plaintiff points to discrete acts of discriminatory conduct as relates to her repeated denial of opportunity for promotion and transfer, Plaintiff indicates that these instances, including those falling outside the applicable charge-filing limitations period, are merely examples of ICI's maintenance of a *discriminatory system* of promotions and transfers. D.I. 33 at 22 (emphasis added). Thus, the exact unlawful claim raised by the Plaintiff is that ICI engaged in a systematic practice of denying *promotion* and *transfer* opportunities to the Plaintiff and other black employees because of their race.

"In general, courts have been more receptive to claims of continuing violations when advanced in connection with denials of promotions or transfers than in many other contexts." *Tyson v. Sun Refining and Marketing Co.*, 599 F.Supp. 136, 138 (E.D.Pa.1984) (citations omitted). *Cf., Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3rd Cir.) (charges alleging the maintenance of discriminatory hiring and promotion policies are continuing violations of Title VII and, as such, could be filed at any time by a present employee), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Plaintiff's claim is advanced in exactly this context. To support her claim that the systems of promotions and transfers at ICI were discriminatory, Plaintiff first identifies the nature of the system and then specific manifestations of how it operated in a discriminatory manner "... each day of her employment." D.I. 33 at 15.[3]

---

3. Although perhaps overstated, Plaintiff's claim that "given the nature of defendant's system of promotion or transfer, an incident of discrimination occurred each day of her employment", D.I. 33 at 15, is neither ridiculous nor nonsensical. D.I. 37 at 7. Essentially, Plaintiff's claim is that the promotion and transfer system maintained by ICI during the entire course of her tenure worked to deny her and other blacks equal opportunities for promotion and transfer and that since the Plaintiff was available and sought to be chosen for interviews, each time the Defendant did not choose her, a specific example of the discriminatory system had occurred. D.I. 33 at 16.

Plaintiff's position garners support from the fact that she was only contacted for one interview during her eleven year employment with ICI, despite substantive efforts to put herself in a more favorable position for promotion including but not limited to the completion of her master's degree. *Id.* at 10. *See also* D.I. 34 at A–166 (file letter dated 1985 indicating that the Plaintiff had been on the job for seven and one-half years and had not been contacted for an interview despite having been under the impression that her degree would enable her to get a better job more quickly). Defendant contends that as a non-exempt employee, Plaintiff was informed by Headquarters Personnel that additional education above a high school degree would not be a significant consideration in determining non-exempt promotion eligibility and that once hired as a non-exempt, there were no promises of a promotion to a professional or exempt position. D.I. 34 at A–173, Exhibit E at 5. Defendant's contention does not eliminate questions of fact as to whether ICI's screening procedure, whereby management determines which employees are qualified or would be interested in available positions without open solicitation, discriminates against ICI's black employees. *See* text accompanying note 4, *infra*, discussing ICI's standard operating procedure.

Additionally, Plaintiff's argument that this system produced perpetual discrimination is not without legal support. *See Reed v. Lockheed*

Standard operating procedure at ICI was that job openings were never advertised to employees and the pool for interviews was never the product of open solicitation from the workforce. D.I. 34 at A–174, Exhibit E at 2. Rather, higher management determined which employees were worthy candidates for promotion and then contacted those candidates for interviews. *Id.* Further, an employee was never contacted about an opening unless an interview was to be scheduled. *Id.* at A–177, Exhibit E at 5. Plaintiff posits that by having upper management subjectively determine as a preliminary matter which employees are qualified for available promotions and transfers, as well as predetermining whether an employee would be interested in the position without even contacting the employee,[4] has resulted in the discrimination of black employees. D.I. 33 at 23.

Thus, Plaintiff's overall claim, including those otherwise untimely allegations, is one of a broad policy of discrimination and for purposes of a summary judgment motion should not be broken down into discrete acts of discrimination. *Accord, Tyson,* 599 F.Supp. at 139 (Court denies defendant's motion for summary judgment as to alleged discriminatory incidents occurring twelve years before plaintiff filed with the EEOC based on plaintiff's allegations of a broad policy of sex discrimination); *Cf., Galloway v. United Parcel Service, Inc.,* 596 F.Supp. 1563, 1565 (M.D.Pa.1984) (Courts are reluctant to dismiss Title VII discrimination suits by summary judgment where motive and intent are crucial elements and the proof is in the hands of the alleged wrongdoer).[5] At a minimum there appears to be a genuine issue of fact as to whether Plaintiff has shown that intentional discrimination against black employees in their promotion and transfer policy was part of ICI's standard operating procedure.

Additionally, "to successfully argue a continued violation theory, ... the plaintiff will have to show a present violation, i.e., one within the statute of limitations period, that is *reasonably related* to previous discriminatory acts, that, standing alone would be barred by the statute of limitations." *Cuffy v. Getty Refining and Marketing Co.,* 648 F.Supp. 802, 810 (D.Del. 1986) (emphasis supplied). In *Cuffy,* the Court held that the plaintiff, a black employee, could not maintain a civil rights claim relating to defendant's failure to promote him or its alleged breaching an EEOC settlement agreement, both of which fell outside the limitations period, because those claims were not related to his allegedly discriminatory suspension which occurred during the applicable charge-filing

---

*Aircraft Corp.,* 613 F.2d 757 (9th Cir.1980). Specifically, in overruling a District Court decision that the plaintiff had not shown a continuing violation for purposes of a sex discrimination claim raised under Title VII, the *Reed* Court held:

> [Plaintiff] alleges for example that under [Defendant's] promotion practice the company approached worthy candidates to ask them if they wished promotion. The employee need not seek it.... [I]f it is true that [Plaintiff] was not promoted for 25 years, then *each day without promotion constituted a new violation of Title VII, assuming that similarly situated males were promoted with more regularity.* The fact that [Plaintiff] sought to establish her case by listing specific incidents antedating the limitations period is irrelevant. The [untimely] events are not the basis of her charge of discrimination. They are but evidence that a policy of discrimination pervaded [Defendant's] personnel decisions. The violations of which she complains *occurred each day of her employment,* ....

*Id.* at 759–60 (emphasis added). *Accord, Tyson,* 599 F.Supp. at 140 (citing *Reed* with approval);

*Corbin v. Pan American World Airways,* 432 F.Supp. 939, 944 (N.D.Cal.1977) (plaintiff's claims of a repeated failure to promote involve ongoing aspects of an employee-employer relationship and when viewing allegations in the light most favorable to the plaintiff, discrimination occurs with the receipt of each paycheck and the award of each opening).

4. Plaintiff claims that as a result of this "screening" process on twenty-one separate occasions, ICI determined that the Plaintiff would not desire certain opportunities for promotion or transfer and was thereby denied the equal opportunity to compete for such promotions and transfers. D.I. 31 at A–13–A–18.

5. Thus, ICI need not be burdened with the necessity of defending instances of alleged discrimination against the Plaintiff dating back many years. Rather, the focus is on the justification for ICI's promotion and transfer policy as a whole. *Accord, Erdmann,* 541 F.Supp. at 394. *See also* D.I. 34 at A–177, Exhibit E at 5.

limitations period. *Id.* In reaching its conclusion the Court reasoned:

> Plaintiff has alleged no facts to support the contention that these otherwise time-barred events are a pattern of discrimination. Moreover, the discriminatory nature of each act is not of itself sufficient to demonstrate the necessary relationship. There is simply no intrinsic connection between these events, other than the involvement of the defendant, to show that they are a pattern of discrimination. These acts are best understood as "isolated instances of discrimination," and insufficient to support a continuing violation theory.

█ In this case, both sides concur that there are at least three incidents of alleged racial discrimination that fall within the charge-filing limitations period and thus constitute a present violation. D.I. 33 at 15; D.I. 30 at 11.[6] Central to Plaintiff's complaint is a challenge to ICI's promotions policy and not simply a challenge to the specific incidents cited. D.I. 33 at 22. Moreover, unlike the circumstances presented in *Cuffy,* the Plaintiff has indeed alleged that these otherwise time barred events are part of a pattern of discrimination. Therefore, the present allegations are reasonably related to the past allegations so as to support a continuing violation theory.

Through preliminary discovery and her sworn affidavit, Plaintiff has shown that throughout her eleven-year employment with ICI, Defendant's practice of having management choose employees to interview for openings without open recruitment resulted in many white employees with less education and experience receiving swifter transfers and promotions than Plaintiff and other similarly situated black employees. D.I. 31 at A–5, Exhibit B. Further, Plaintiff has charged (without contradiction) that pursuant to this system no black employee has been promoted into an exempt position (position of management) in her eleven-year tenure. D.I. 33 at 23.[7]

When viewed in this context, Plaintiff's otherwise untimely claims concerning her being denied promotion and transfer opportunities are arguably part of a discriminatory pattern that was in place during the course of her eleven year tenure as opposed to isolated instances of discrimination which could not support a continuing violation theory. Because the decision to grant an employee an interview rested solely within the arbitrary and unbridled discretion of Defendant's higher management and that as a result of this system employees could not easily determine the proper channels to be contacted in order to apply for an opening, D.I. 33 at 10 n. 4, each specific incident to which the Plaintiff refers may for purposes of this summary judgment motion be seen as "links in a chain, bound together by defendant's consistent, discriminatory policy." D.I. 33 at 21.[8]

---

**6.** *See supra* note 2.

**7.** Defendant's "statistics" are by no means dispositive on the issue of whether there remains a genuine issue of fact concerning a discriminatory system maintained by the Defendant. According to the Defendant, during the period 1984–1988, 40% of non-exempt black employees (2 out of 5) and 60% of non-exempt white employees (39 out of 65) were either promoted or transferred. D.I. 37 at 9. Contrary to Defendant's contention that these figures "clearly *do not* reveal a comprehensive policy or practice of discrimination by ICI in its promotion system", *Id.* (emphasis in original), the Court finds that there still remains a genuine issue as to the existence of a comprehensive policy of discrimination.

On their face, these figures do not unequivocally dispel the notion that there may have been a discriminatory promotion and transfer policy at ICI. More importantly though, these figures in no way speak to the issues of *how fast* these employees were promoted when competing with one another, why under this system no black employees have been promoted into a position of management during the Plaintiff's *eleven years* as an employee, and why the Plaintiff was only called for one interview during the course of her eleven year employment with the Defendant. At best, these statistics raise a genuine issue of fact concerning the existence of a discriminatory system at ICI.

**8.** In fact, by showing the exact nature of the Defendant's system that has allegedly resulted in a pattern of discrimination to Plaintiff and other black employees, Plaintiff has gone further than this Circuit has in practice required in order to survive a motion for summary judg-

Furthermore, as already indicated, because the Defendant is the moving party, any doubts as to the existence of genuine issues of fact are resolved against it and all inferences to be drawn from the material it submits are viewed in the light most favorable to the Plaintiff. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3rd Cir.1988); *Norfolk Southern Corp. v. Oberly*, 632 F.Supp. 1225, 1231 (D.Del.1986) (citing *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)), *aff'd*, 822 F.2d 388 (3rd Cir. 1987). Because the evidentiary record supports a reasonable inference that may be drawn in favor of the Plaintiff, that is, that ICI maintained a discriminatory system as relates to the promotion and transfers of its employees, the moving party Defendant cannot obtain summary judgment. *Accord, In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (3rd Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).[9]

## IV. COUNT II—STATE LAW DISCRIMINATION CLAIM

■ In Count II of her Amended Complaint, Plaintiff seeks to bring a private cause of action directly under the state of Delaware's discrimination law. D.I. 8 at 6. Defendant has moved for summary judgment on the grounds that Delaware's discrimination law does not authorize a private cause of action. D.I. 30 at 16–17.

Unlawful employment practices are set forth in the Delaware Discrimination in Employment Statute. 19 Del.C. § 710 *et seq.* An aggrieved employee may file a claim of discrimination with the Delaware Department of Labor (hereinafter "DDOL"). *Id.* at § 712(b). The statute then authorizes the DDOL to serve the charge upon the employer and investigate it. *Id.* If the DDOL determines that there is reasonable cause to believe that the charge is true, it will initially attempt to secure voluntary compliance through informal methods of conciliation and persuasion. *Id.* at § 712(c). If the DDOL determines that voluntary compliance and conciliation are not possible, it will issue a complaint and institute proceedings before a review board. *Id.* at § 712(e).[10] The review board will then conduct a hearing and order the appropriate relief. *Id.* at § 712(g). Any party aggrieved *by the decision of the review board may obtain judicial review.* *Id.* at § 712(h) (emphasis added).[11]

---

ment on the question of a continuing violation. In *Knoll v. Springfield Tp. School Dist.*, 699 F.2d 137 (3rd Cir.1983), *vacated on other grounds*, 471 U.S. 288, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985), the Third Circuit overruled a District Court decision granting the defendant summary judgment on the question of whether the plaintiff had shown a continuing policy of discrimination so as to raise otherwise untimely Title VII claims. In that case, the evidence before the District Court consisted solely of three isolated incidents of alleged discrimination particular to plaintiff's circumstance and her averment that there was a continuing policy of discrimination against her based on sex discrimination. *Id.* at 145. In finding for the plaintiff, the Third Circuit found that "[i]n the context of a summary judgment proceeding, [the Court] must accept as true plaintiff's averment that defendants maintained a continuous policy of discrimination." *Id.* at 146. The Court found that the defendants had offered no countervailing facts to dilute her averment of a continuing policy of discrimination. *Id.*

Similarly, the Court finds that for purposes of a motion for summary judgment, no compelling facts have been presented that dispels Plaintiff Wright's claim that ICI maintained a discriminatory system of promotions and transfers during the Plaintiff's eleven years as an employee.

**9.** As a result of this decision, the Court need not reach the question of whether the statute of limitations should be equitably tolled to allow Plaintiff to bring claims arising outside the applicable charge-filing limitations period. D.I. 33 at 24.

**10.** One telling factor that there exists no private cause of action under this statute is the express language of section 712(e) which provides that the Department's determination of whether a complaint is to be filed at all "shall not be reviewable in any court...." *Accord, Chalawsky v. Sun Refining and Marketing Co. Inc.*, 733 F.Supp. 791, 799 (D.Del.1990) ("Likewise, given the unreviewable discretion granted to the DDOL, it seems unlikely a private right to sue—despite an unfavorable determination by the DDOL—was intended").

**11.** Section 712(h) also provides for a very specific procedural scheme as to where and when judicial review of the review board's order is

"This Court will not presume that the Delaware legislature intended remedies it did not include in the statute." *Chalawsky v. Sun Refining and Marketing Co., Inc.*, 733 F.Supp. 791, 799 (D.Del.1990).[12] Nowhere, within this detailed statutory framework is there even a suggestion of private remedies for aggrieved employees. Rather, it is clear that the express procedural scheme set forth in the statute only contemplates judicial review after the review board has issued its findings. In the case at bar, the DDOL found that reasonable cause existed for believing the charge was true but at no time was a complaint ever filed before the review board. Thus, no order has issued from the review board from which the Plaintiff was entitled to judicial review. The Court agrees with the Defendant's conclusion that Plaintiff's allegation that ICI violated Delaware's discrimination law does not state a viable cause of action. D.I. 37 at 11. Accordingly, summary judgment is appropriate.

## V. COUNTS III–VI—STATE LAW CONTRACT AND TORT CLAIMS

In Counts III–VI of the Amended Complaint, Plaintiff raises common law contract and tort claims. D.I. 8 at 7–12. Defendant moves for summary judgment as to all of these claims on the grounds that they are time-barred by the applicable statute of limitations and, in the alternative, that they are not cognizable under Delaware law. D.I. 30 at 17–22.

### A. *Statute of Limitations Argument*

In Count III, Plaintiff declares that she and the Defendant were in privity of contract since August, 1977, when "Defendant offered and Plaintiff accepted a contract of employment." D.I. 8 at 7. Plaintiff contends that as part of this contract, Defendant impliedly and expressly promised to provide equal opportunities to all employees in promotion and/or transfer, regardless of race, that Plaintiff's performance would be evaluated in a nondiscriminatory manner and that Plaintiff would at all times be dealt with fairly and in good faith. *Id.* at 7–8. Plaintiff then points to various ways in which the Defendant allegedly breached these terms. *Id.*[13] As a result of this alleged breach, Plaintiff seeks compensatory and punitive damages for both monetary loss and emotional distress. *Id.*

In Counts IV–VI, Plaintiff raises assorted common law tort claims. Plaintiff claims that Defendant breached its duty to exercise reasonable care by failing to establish and/or administer (1) a non-discriminatory system for promotions and transfers;[14] (2) a non-discriminatory system for

available. Specifically, in order to obtain judicial review, an individual must file a petition for review in the Court of Chancery and must file it within thirty days after a copy of the order of the review board is received.

**12.** The District Court concluded that there was no private cause of action under Delaware's discrimination law, finding that the plaintiff had exhausted his state remedies when the DDOL determined that there was no reasonable cause for the charge. *Chalawsky*, 733 F.Supp. at 799. Plaintiff's claim that the fact that the DDOL did find reasonable cause in this case distinguishes it from *Chalawsky* so as to allow a private cause of action, is not persuasive. D.I. 33 at 26.

**13.** According to the Plaintiff, Defendant breached its contract with Plaintiff by: (1) failing to provide her with equal opportunity for transfer and promotion; (2) implying through Defendant's agents that she was being assisted in securing promotional and/or transfer opportu-

nities when in fact no such assistance was provided; (3) by refusing to allow Plaintiff access to her personnel file; (4) by misrepresenting to the Plaintiff the contents of her personnel file and/or performance evaluations; (5) by including in Plaintiff's personnel file a racial remark which was irrelevant to Plaintiff's performance and by including this remark without Plaintiff's knowledge or consent; and (6) by unfairly reviewing Plaintiff's performance in a discriminatory manner. D.I. 8 at 8.

**14.** Plaintiff avers that the Defendant breached this duty by (1) maintaining a promotion/transfer system that was illegal; (2) maintaining a promotion/transfer system that was discriminatory; (3) failing to fairly consider Plaintiff's applications and/or requests for transfer; (4) assuming without consulting Plaintiff that she would not be interested in certain opportunities; (5) failing to provide sufficient assistance to Plaintiff with respect to promotion/transfer. D.I. 8 at 9.

evaluating the performance of employees;[15] and (3) a non-discriminatory system whereby employees directly or indirectly responsible for the promotion and/or transfer of other employees are reasonably supervised (Counts IV–VI respectively).[16] As to all of these claims, Plaintiff seeks damages for substantial economic loss and emotional distress.

Defendant contests the timeliness of all of these state law claims. Under Delaware law "no action based on a promise, ... and no action to recover damages caused by an injury unaccompanied by force or resulting indirectly from the act of the defendant shall be brought after the expiration of three years from the accruing of such action." 10 Del.C. § 8106. Where the action involves "personal injuries", the statute has carved out an exception whereby "no action ... shall be brought to recover damages after the expiration of two years from the date upon which it is claimed that such alleged injuries were sustained." *Id.* at § 8119. *See Read v. Local Lodge 1284, Intern. Ass'n of Machinists and Aerospace Worker's*, 528 F.2d 823, 826 (3rd Cir.1975) (Delaware's three-year statute of limitations is the general statute and the two year statute controlling personal injuries is the exception); *Patterson v. Vincent*, Del.Super., 61 A.2d 416 (1948) (2 year statute of limitations applies to case based on breach of contract where plaintiff sought recovery for personal injuries).

In determining which statute of limitations period is applicable, courts focus on the nature of the injury and not the characterization of the cause of action. *Read,* 528 F.2d at 825. *See also Smith v. Goldstein,* 447 F.Supp. 1244, 1245 (D.Del.1978) (in finding that the two-year statute of limitations applied to plaintiff's cause of action for defamation and intentional infliction of emotional distress, the Court rejected attempts to place the case in a tort or contracts cubbyhole for statute of limitations purposes opting instead to focus on the nature of the injury). Consequently, Defendant posits that under this Circuit's standards for what constitutes "personal injuries" Plaintiff's claims for emotional distress are properly governed by the two-year statute of limitations of section 8119[17] while the claims for monetary and economic loss are appropriately governed by the three-year statute of limitations of section 8106. D.I. 30 at 17–18. Conversely, Plaintiff contends that all of her claims, including those for emotional distress, are governed by the three-year statute of limitations of section 8106. D.I. 33 at 27.[18]

The Court need not resolve the tension between these two relevant statutory provisions to reach its determination as to whether Plaintiff's state law claims are time-barred. Even if this Court were to make the tenuous assumption that Plaintiff's expansive three-year limitations period is the appropriate filing period for *all* its common law state claims, including its claims for emotional distress,[19] there exists

15. Plaintiff contends that Defendant breached this duty by utilizing irrelevant material in her performance evaluations by failing to accurately maintain her performance evaluations and by misinforming Plaintiff regarding the contents of her personnel file and/or performance evaluations. D.I. 8 at 10.

16. Plaintiff claims that Defendant breached this duty by (1) failing to take measures to remedy the disproportionately lower rate of promotion for black employees; (2) failing to recruit and/or hire minority employees in to supervisory positions; (3) by failing to inspect and/or timely remove irrelevant information from her personnel file; and (4) by failing to provide training and/or instructions to Plaintiff's Supervisors and/or those in charge of promotion as regards to nondiscriminatory solicitation and

evaluation of candidates for promotion and/or transfer. D.I. 8 at 11–12.

17. See note 19, *infra,* for a detailed treatment of this Circuit's approach to the issue of when a cause of action is one of "personal injury" warranting the application of section 8119's two-year statute of limitations.

18. Plaintiff's stance is that her claims seeking damages for emotional distress are governed by section 8106's three-year statute of limitations because Defendant's conduct was unaccompanied by force. D.I. 33 at 27. *See* note 19, *infra,* discussing the viability of this argument.

19. Defendant chooses not to emphasize the two year-three-year distinction in its Response Brief, seemingly willing to start from the premise that a three-year statute of limitations is applicable

no genuine issues of fact on whether Plain- tiff's state law claims are timely. Despite creative attempts by the Plaintiff to demonstrate otherwise, this Court finds that under a three-year statute of limitations the Plaintiff's state law claims are still untimely and that summary judgment is thereby warranted.

Under Delaware law, a contract claim accrues at the time of the breach. *Hood v. McConemy*, 53 F.R.D. 435 (D.Del 1971). Tort claims accrue at the time of the injury. *Nardo v. Guido DeAscanis & Sons, Inc.*, Del.Super., 254 A.2d 254 (1969). Here, Plaintiff summarily states that the date of breach for her contract claim (Count III) and the date of injury for her negligence claims (Counts IV–VI) as September 20, 1988, the date she resigned from ICI.[20]

Plaintiff's contention is fatally flawed. In response to five different interrogatories as to when the Defendant allegedly committed its contract and negligence breaches against the Plaintiff, Plaintiff herself has admitted that "she came to the realization *shortly before her resignation* that she would not be promoted into any position by Defendant." D.I. 31, Exhibit B at Interrogatory Nos. 4, 5, 8, 9 and 10 (emphasis added). Thus, there is no question of fact that if Defendant breached its contract and/or duties to the Plaintiff thereby causing her injury, that said breaches and injuries occurred *prior* to the date at which she became aware or discovered that she would not be promoted. Since this date was obviously some time prior to September 21, 1988, more than three years had elapsed when Plaintiff filed her cause of action on September 21, 1991, and therefore her state law claims are time-barred.

Plaintiff's attempt to rehabilitate her claims is without merit. As indicated by the Plaintiff, the appropriate accrual date for statute of limitations purposes is the date in which injuries are sustained as a result of the breach. D.I. 33 at 28 (citing *Youell v. Maddox*, 692 F.Supp. 343, 355 (D.Del.1988). The Plaintiff claims that consequently it is not the date she became aware that the Defendant had committed breaches against the Plaintiff but rather the date she suffered injuries as a result of those breaches.[21] Plaintiff unilaterally de-

---

to all of Plaintiff's state law claims. *See* D.I. 37 at 12–14. However, Plaintiff's argument that her claims for emotional distress are governed by the general three-year statute of limitations provided in section 8106 is doubtful in light of this Circuit's standards for what constitutes a "personal injury" triggering section 8119's two-year statute of limitations.

> The term "personal injuries" in 10 Del.C. § 8119 (rev. 1974) "should be given the same or equivalent meaning as that long understood to be [its] meaning when used by recognized authorities and the courts." *McNeill v. Tarumianz*, 138 F.Supp. 713, 716 (D.Del.1956). Thus, personal injuries involve injuries to a persons security which "consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his *health*, and his reputation."

*Smith*, 447 F.Supp. at 1247 (citing *Read*, 528 F.2d at 828 n. 2 (Garth, dissenting opinion)) (emphasis added). As Plaintiff's claims for emotional distress are injuries to her mental health, they are accurately seen as a claim involving personal injuries thereby triggering section 8119. Moreover, in a case not cited by either party, this District has expressly held that emotional injuries are "personal injuries" for statute of limitations purposes. *Carr v. Town of Dewey Beach*, 730 F.Supp. 591, 599 (D.Del.1990). Thus, a two-year limitations period appears appropriate as to those claims seeking emotional distress.

Since Plaintiff herself seeks an accrual date for the statute of limitations of September 20, 1988, the date of her resignation from ICI, D.I. 33 at 28, and her case was brought three years later on September 20, 1991, under this analysis, Plaintiff's claims for emotional distress would be time-barred as a matter of law. Additionally, the Court notes that it is not at all persuaded by Plaintiff's self-serving but unsubstantiated claim that "Plaintiff's suit against Defendant sounds essentially in contract rather than in tort" and that therefore tort recovery cannot be denied. D.I. 33 at 28. This claim is completely without foundation in the record and seems to fly in the face of Counts IV–VI of Plaintiff's Complaint which claim negligence and focus exclusively on alleged breaches of duty by the Defendant.

20. Under such an accrual date, Plaintiff's claims would be timely because she brought this cause of action exactly three years later, on September 20, 1991.

21. The Court tends to agree with the Defendant's position that it is wholly inconsistent that the Plaintiff became aware of Defendant's breaches shortly before her resignation but that she suffered her injuries as a result of the

clares the date she resigned, September 20, 1988, as the date she last sustained injury as a result of Defendant's breach.

Taking Plaintiff's position to its logical end, Plaintiff could have brought these state law claims within three years of her resignation no matter what date she chose to resign and without regard to the last date she truly sustained an injury.[22] The Court rejects this notion on its face because her resignation does not trigger an injury, rather, Plaintiff suffered an injury every time she was wrongfully denied a promotion. D.I. 37 at 13. Unfortunately for Plaintiff, there is nothing in the record that suggests that on September 20, 1988, the day she resigned, that the Plaintiff was denied a promotion or suffered an injury as a result of a breach. In fact, the alleged promotion denials occurred before September 20, 1988. D.I. 31 at A–2–A–3.[23] As such, Plaintiff's state law claims were not filed in a timely fashion, even under a three-year statute of limitations. Therefore, since there exists no issue of material fact on whether these claims are timely, Defendant's motion for summary judgment is appropriately granted.

### B. *Cognizable Claims Argument*

Having determined that the Plaintiff's claims are time-barred as a matter of law, the Court need not reach Defendant's argument that these state law claims do not

---

breach on the day she resigned. D.I. 37 at 13 n. 2. As Defendant properly notes, D.I. 33 at 13, Plaintiff herself adds to the confusion by in one breath suggesting that the date of awareness is irrelevant for statute of limitations purposes and in the next breath claiming that she last sustained injury on September 20, 1988, the date she submitted her resignation to ICI, "upon her awareness of Defendant's discriminatory practices." D.I. 33 at 28.

**22.** In essence, Plaintiff could be denied a promotion, wait a year or two from the date of that denial to resign and then use the date of her resignation as the accrual date for statute of limitations purposes. This would be true despite the fact that on the date she resigned, Plaintiff did not allege a breach by the Defendant.

**23.** In her affidavit, the Plaintiff avers that "the straw that broke my back was the promotion of Ann Jones, a white female to the position of

---

state viable causes of action under state law. D.I. 30 at 21–23.

### VI. MOTION TO STRIKE PLAINTIFF'S DEMAND FOR A JURY TRIAL, PUNITIVE AND COMPENSATORY DAMAGES AND EXPERT FEES

As noted, Plaintiff filed her initial complaint against the Defendant on September 20, 1991. Plaintiff filed an Amended Complaint on January 10, 1992. D.I. 8. In it, the Plaintiff brings a claim that the Defendant has violated Title VII of the Civil Rights Act and requests a trial by jury, compensatory and punitive damages and expert fees. *Id.* at 1, 6. Plaintiff bases her request for these remedies on the fact that on November 21, 1991, Title VII was amended to afford Plaintiff these remedies. Civil Rights Act of 1991, Pub. L.No. 102–166, 105 Stat. 1071 (1991).[24] Defendant argues that the 1991 Act is to only be applied prospectively and therefore would not be available to Plaintiff whose initial complaint was filed prior to the 1991 amendments to Title VII. D.I. 28. Conversely, Plaintiff argues that the 1991 Act should be applied retroactively to her Title VII claim raised prior to the acts passage. D.I. 29.

Although the Third Circuit has yet to issue a ruling on the highly litigated question of whether the 1991 Civil Rights Act is to apply retroactively, this District has held that the 1991 Act does *not* apply retroac-

---

Marketing Coordinator." D.I. 34 at A–185, Exhibit F. Plaintiff suggests that it was at the time of Ann Jones' promotion that it became clear that she had been "strung along" and that she would not be promoted regardless of her performance, education or initiative. *Id.* According to Plaintiff, the breach by the Defendant as regards the promotion of Ms. Jones instead of the Plaintiff occurred on July 26, 1988. D.I. 31 at A–3. Thus, the injury suffered by the alleged breach by the Defendant occurred on that day and not almost two months later when she elected to resign.

**24.** Section 102 of the 1991 Act allows an individual who alleges intentional discrimination to demand a trial by jury and to seek compensatory and punitive damages. Section 113 expressly authorizes an award of expert fees.

tively. *Crumley v. Delaware State College*, 797 F.Supp. 341, Schwartz, J. (D.Del. 1992); *Konstantopoulos v. Westvaco Corp.*, 1992 WL 162957, 1992 U.S. Dist.Lexis 9466, Wright, J. (D.Del. June 19, 1992). Absent a contrary ruling from the Third Circuit, this Court is inclined to adopt the reasoning in *Crumley*. Because this Court holds that the 1991 Civil Rights Act does not apply retroactively, Defendant's Motion to Strike is hereby granted.

## VII. CONCLUSION

Defendant's motion for partial summary judgment is denied in part and granted in part. With regard to Count I, Defendant's motion that those incidents of discrimination raised under Title VII falling outside the ordinary three hundred day filing period be dismissed as being time-barred is denied. Summary judgment as to Counts II–VI raised under state and common law is granted. Additionally, Defendant's Motion to Strike Plaintiff's Demand for a Jury trial, for Compensatory and Punitive Damages, and for Expert Fees is granted.